THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. NEWTON C. DOUGHERTY, Plaintiff in Error.

*Opinion filed December 16, 1914—Rehearing denied Feb. 13, 1915.*

1. CRIMINAL LAW—*when a motion for discharge for delay in prosecution is properly overruled.* A motion for discharge for delay in prosecution upon the ground that the accused had once been in custody for more than four months under a former indictment charging him with the same offense is properly overruled, where such former indictment would not have authorized a conviction of the offense charged in the new indictment.

2. SAME—*when former indictment does not authorize conviction of offense charged in new one.* A former indictment which charges the offense of forging certain school scrip for the sum of $100, there being no date, number of the warrant or name of the payee in the copy of the instrument set out in the indictment, would not authorize a conviction for forging a warrant for the sum of $45, bearing a certain number and date and containing the name of the payee.

3. SAME—*what competent in a forgery case to show intent.* In a prosecution for forging the indorsement of the name of the payee in a certain school warrant, where the accused admits the forgery but attempts to explain it as having been done with an honest purpose, proof that the accused, at about the same time, forged the indorsements upon other school warrants is admissible, as tending to show intent and guilty knowledge.

4. SAME—*when the People cannot be required to elect.* The People cannot be required to elect as to which count of an indictment they will rely upon for a conviction where each count is predicated upon the alleged act of the accused in issuing, indorsing and uttering the same school warrant.

5. SAME—*when introduction of records of conviction for other forgeries is proper.* In a prosecution for forging the indorsement on certain school scrip, if the accused becomes a witness in his own behalf it is proper, for the purpose of affecting his credibility, to admit in evidence the records of other cases¹ in which the accused plead guilty to the offense of forgery.

6. SAME—*when instruction is not objectionable as singling out the testimony of the accused.* An instruction dealing solely with the matter of the weight to be given to the testimony of the accused, which concludes with the statement that if the jury shall find that he has willfully testified falsely to a material matter they

have a right to disregard his testimony in so far as it is not corroborated by other credible evidence or facts and circumstances, is not objectionable because such statement is not made applicable to all the witnesses.

7. SAME—*proof of other crimes need not be established beyond reasonable doubt.* Where proof of other crimes similar to 'the one charged is admitted for the purpose of showing intent and guilty knowledge, it is not necessary that such other crimes shall be established beyond a reasonable doubt in order to authorize a conviction for the crime charged, provided there is other sufficient evidence.

8. SAME—*when refusal of an instruction on circumstantial evidence is proper.*. The refusal of an instruction stating the rule as to what is required where circumstantial evidence is relied upon for a conviction is properly refused, where the conviction of the accused was not sought upon circumstantial evidence but there was direct evidence tending to prove his guilt.

9. SAME—*when Supreme Court cannot consider alleged error in allowing book to go to jury.* Alleged error in allowing a book containing transactions of the school board to go to the jury in a criminal case without effectively concealing such portions thereof as were not admitted in evidence cannot be considered by the Supreme Court, where such portions as are claimed should have been concealed are not before it.

10. SAME—*Statute of Limitations does not run against crime of forgery—effect of punishment for other forgeries.* The Statute of Limitations does not run against the crime of forgery, and the facts that the accused has been punished for other forgeries, has served a term in the penitentiary and has been paroled and pardoned, do not justify the Supreme Court in reversing a judgment of conviction for another forgery committed at about the same time as those for which he has been punished.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding.

WEIL & BARTLEY, for plaintiff in error.

P. J. LUCEY, Attorney General, C. E. McNEMAR, State's Attorney, and GEORGE P. RAMSEY, (GEORGE A. SHURTLEFF, and CLARENCE D. MURPHY, of counsel,) for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

At the March term, 1914, of the circuit court of Peoria county an indictment was returned against Newton C. Dougherty, plaintiff in error, charging him with the crime of forgery. Certain counts of the indictment charged him with forging a certain order or warrant in the words and figures following:

"$45.　　　　　　School Scrip.　　　　　　No. 3029
CITY OF PEORIA, ILL., *Oct. 2, 1888.*
"Treasurer of the Board of School Inspectors of the city of Peoria:
"Pay to Mary Hay or order forty-five dollars for teaching.
　"By order of the Board of School Inspectors of the City of Peoria.
N. C. DOUGHERTY, *Sec'y.*　　　　　　E. HINE, *Pres't.*"

Other counts of the indictment charged him with forging the name of the payee on the back of said warrant, and still other counts charged him with uttering the alleged forged warrant and said warrant with the alleged forged indorsement. Each count charged that the offense was committed on October 2, 1888. Upon his arrest under this indictment a motion was made by plaintiff in error that he be discharged for want of prosecution, pursuant to section 18 of division 13 of the Criminal Code, and in support of this motion plaintiff in error presented his affidavit, in which it was averred that plaintiff in error is the same person who was named as defendant in a former indictment charging him with the same offense with which he is charged in the indictment herein, the former cause having been numbered 245; that he was in said cause No. 245 committed to jail on November 21, 1905; that he was not released on bail and was not tried at a term of court commencing within four months after his commitment; that said cause No. 245, and all proceedings therein, have been abandoned, and that at the time of the return of the indictment herein plaintiff was, and had for a long time been, at liberty. Certain records of the circuit court of Peoria

county were also offered in evidence at the hearing upon
said motion, showing that at the November term, 1905, of
the circuit court of Peoria county an indictment was re-
turned against plaintiff in error in cause No. 245, charg-
ing him with forging "certain instruments in writing for
the payment of money, to-wit, school scrip, to-wit, school
orders, each and all of the same being of the tenor follow-
ing, to-wit:

"School Scrip.          PEORIA, ILL., .........I....No.....
"Treasurer Peoria Board of School Inspectors:
    "Pay to the order of.....................................
one hundred dollars, $100.00.
For.....................
                        By order of Peoria school board.
N. C. DOUGHERTY, *Secretary.*          *President.*

a more particular description of each of the said instru-
ments of writing being here and now to the said grand
jury unknown; and he did then and there unlawfully and
feloniously forge and counterfeit on the reverse side or
back of, to-wit, each of them, the name of the person,
persons, firms or corporations named in the said instru-
ments as the payees thereof." The record in cause No. 245
further shows that on November 21, 1905, a *capias* was
issued by the clerk of the court, and on the same day the
sheriff executed the *capias* by arresting plaintiff in error
and confining him in jail, and that on March 1, 1906, upon
motion of the State's attorney, cause No. 245 was stricken
from the docket, with leave to re-instate. It was also
shown that on November 24, 1905, in the circuit court of
Peoria county, the plaintiff in error pleaded guilty to the
charges contained in certain other indictments, and was on
that date sentenced upon his pleas of guilty to imprison-
ment in the penitentiary for a period of not less than one
year and not more than fourteen years, and was, pursuant
to such sentences, committed, on November 24, 1905, to
the State penitentiary at Joliet, and was therein confined
until November 11, 1911, when he was released on parole

and was subsequently pardoned. The court overruled the
motion of plaintiff in error to be discharged for want of
prosecution, and subsequently, upon a trial before a jury,
he was found guilty of forgery as charged in the indict-
ment herein and was sentenced to the penitentiary at Joliet.
He has sued out this writ of error to reverse the judgment
of the circuit court.

It is first urged as ground for reversal that the court
erred in denying the motion above referred to. This con-
tention is based on the assumption that under the indict-
ment in cause No. 245 plaintiff in error could have been
convicted of forging the warrant set forth in the indictment
in this case, and it is argued that plaintiff in error was
therefore, under the statute as construed in *Brooks* v. *Peo-
ple,* 88 Ill. 327, *Newlin* v. *People,* 221 id. 166, and other
similar cases, entitled to be discharged for want of prose-
cution. In order to show that this assumption is unwar-
ranted it is necessary to point out but one of many reasons
why the plaintiff in error could not have been convicted of
forging the warrant set forth in the indictment in this case
under the indictment in cause No. 245. Each of the war-
rants described in the indictment in cause No. 245 was for
the sum of $100, while the warrant described in the in-
dictment in the case at bar is for the sum of $45. Al-
though the warrant set forth in the indictment in cause
No. 245 does not purport to be a full and complete copy
of any warrant which plaintiff in error was therein charged
to have forged, in that it does not purport to set forth
the date or number of any such warrant or the name of
the payee therein, it does purport to set forth the amount
for which the warrant was drawn, and it is then alleged
that a more and particular description of the warrant is to
the grand jury unknown. Under the indictment in cause
No. 245 it would have been necessary, in order to have
convicted the plaintiff in error, to have shown that he had
forged a warrant for $100 or an indorsement on a war-

rant for that amount. Proof that he had forged a warrant for $45, or an indorsement on a warrant for that amount, would not have sustained a conviction under that indictment. (*Brown* v. *People,* 66 Ill. 344.) The court did not err in denying the motion to discharge plaintiff in error for want of prosecution.

It is urged that the evidence does not sustain the verdict. It was in the first instance shown by the People, and subsequently admitted by plaintiff in error, that plaintiff in error made out warrant No. 3029, which he was charged with having forged, and that he indorsed the name of the payee, Mary Hay, thereon without her knowledge or consent. The only controversy over the execution or indorsement of this warrant arose over the signature of E. Hine as president, which appears on the face of the warrant. Edward Hine, who was called as a witness by the People, testified that in 1888 he was president of the board of school inspectors of the city of Peoria, (hereinafter referred to as the school board,) and that this signature was not in his handwriting and he did not authorize anyone to sign his name to that warrant, while plaintiff in error testified that this signature was in the handwriting of the witness, Edward Hine. It was further shown by a canceling stamp appearing on the face of the warrant and by the books of the treasurer of the school board that warrant No. 3029 had been paid by the treasurer of the school board. It having been conclusively shown by the evidence offered by the People in chief, and having been subsequently admitted by plaintiff in error, that plaintiff in error had issued the warrant in question and had indorsed the name of the payee thereon without her knowledge or consent and that the warrant had been paid by the treasurer of the school board, the guilt or innocence of plaintiff in error depended entirely on the intent with which he issued and indorsed the warrant.

It appears from the evidence that in 1888, and for a number of years prior thereto, Mary Hay was a teacher in the public schools of Peoria, the schools having been conducted under a special act of the legislature by the board of school inspectors of the city of Peoria. The plaintiff in error was, and had been for several years, secretary of the school board. In June, 1888, immediately following the close of the school year, the teachers for the succeeding school year were engaged, and a printed list classifying the teachers under the names of the schools in which they were to teach, and showing the salary of each, was made out and pasted in the minute book of the school board by plaintiff in error. From this list it appears that in June, 1888, Mary Hay was assigned to teach at the Douglas school, of which Mrs. S. A. Black was principal, and her name appeared third on the list of teachers, following the name of the principal, at the Douglas school. Before the beginning of the school year certain changes were made in the list of teachers by the school board and Mary Hay was transferred to the Sumner school. From the printed list above referred to it appears that in 1888 there were eleven schools, in addition to the high school, in the city of Peoria, and that more than one hundred teachers were employed by the school board.

At a meeting of the school board held October 2, 1888, plaintiff in error was directed to issue warrants upon the treasurer for salaries for the month of September, 1888, due teachers, janitors and officers of the board, and for certain other claims which had been presented to and allowed by the board. The minutes of this meeting, kept by plaintiff in error as secretary and showing this action of the board, do not disclose the names of the persons entitled to salaries for the month of September, but merely show the total of such salaries to be $7110.03. Under date of October 2, 1888, the plaintiff in error made out and issued warrants upon the treasurer as directed by the board. The

treasurer's cash book, which was introduced in evidence by the People in rebuttal, shows, however, that instead of issuing warrants for salaries totaling $7110.03, plaintiff in error issued, and the treasurer paid, warrants for salaries totaling $7491.53, and the treasurer's cash book in this regard was shown to be correct by the canceled warrants issued under date of October 2, 1888, which were also offered in evidence by the People in rebuttal. Two of the warrants so issued and paid were issued in the name of Mary Hay for salary due her for the month of September, 1888. One was numbered 3098, and upon this warrant she received her salary for the month of September. The other was numbered 3029, and is the one upon which the charge of forgery is predicated, and it was shown by the People, and admitted by plaintiff in error, that Mary Hay never received or indorsed this warrant.

As an explanation of his act in issuing warrant No. 3029, plaintiff in error, upon direct examination in his behalf, testified that he commenced making out the warrants for the salaries of teachers for the month of September, 1888, about a week before October 2, 1888, doing the work between the hours of four and five o'clock in the afternoon and following the printed list which had been made out in June, 1888; that he was interrupted in this work and followed the printed list mechanically, and for these reasons he inadvertently issued warrant No. 3029 to Mary Hay as a teacher at the Douglas school, as her name appeared on the printed list as a teacher at that school. In support of this explanation plaintiff in error calls attention to the fact that warrant No. 3026 was issued to Mrs. S. A. Black, the principal of the Douglas school, and that by following the names on the printed list in their order, warrant No. 3029 would necessarily have been issued to Mary Hay. The People, however, point out that had plaintiff in error followed the printed list in making out warrants for the teachers of the Douglas school, warrant No. 3027 would have

been issued to A. Maroney and warrant No. 3030 would have been issued to Emma Craig, while the warrants themselves, which were introduced in evidence, show that warrant No. 3027 was issued to Mary Snelling and warrant No. 3030 was issued to Gertie Hurley, and that plaintiff in error admitted upon his cross-examination that he issued ten warrants for teachers at the Douglas school when there were but nine teachers there.

Plaintiff in error further testified that before he had completed making out the warrants from the printed list, the reports made out by the principals of the various schools, giving the names of the teachers who had taught therein during the month of September, were filed in his office, and that he followed those reports in making out the balance of the pay-roll, and by following the report of the principal of the Sumner school, which school appeared near the end of the printed list, he issued warrant No. 3098 to Mary Hay; that on or about October 3 he inclosed the warrants for the teachers of the Douglas school in one envelope and the warrants for the teachers of the Sumner school in another envelope and sent the same to the respective principals of those schools, and that on the afternoon of the same day the principal of the Sumner school returned to him warrant No. 3029.

As an explanation of his action in indorsing the name of Mary Hay upon warrant No. 3029, plaintiff in error testified that shortly after the warrant had been returned to him by the principal of the Sumner school, Maggie E. Becker, who had been employed as a teacher but whose name had not been placed on the pay-roll, came into his office; that she was entitled to $45 for teaching during September but no warrant had been issued to her; that instead of issuing a warrant to her he indorsed the name of Mary Hay upon warrant No. 3029, gave it to Maggie E. Becker and telephoned the treasurer of his action in this regard. Both M. E. Bergan, who was treasurer of the

school board in 1888, and Maggie E. Becker, referred to by plaintiff in error in his testimony, are now deceased. Plaintiff in error further testified that he entered the name of Maggie E. Becker on the stub from which this warrant was detached, but it appears that the book containing this stub, together with other records of the school board, were subsequent to 1905 stolen from the safe in which the records of the school board were kept. As a reason why the name of Maggie E. Becker did not appear upon the list of teachers engaged to teach during the school year beginning in September, 1888, plaintiff in error testified that she was married and the rules of the board prohibited the employment of married women as teachers, but that, notwithstanding this rule, she was in September, 1888, re-employed as a substitute teacher and her salary was fixed at $45 per month but no record was made of her employment; that she was first assigned to the Douglas school but was soon afterwards transferred to the Irving school. As corroborative of this testimony plaintiff in error points out that the printed report of the school board for the school year beginning in September, 1888, and ending in June, 1889, contains the name of Maggie Becker as a teacher. The People, however, call attention to the fact that the printed report above referred to does not purport to show whether she taught in the public schools of Peoria during the entire school year or only during the latter part thereof, and that the report shows that her salary was $40 instead of $45 per month. The People also point out that from the testimony in the case, including that of plaintiff in error, it appears that substitute teachers were paid but $1.50 per day, and that had Maggie E. Becker taught as a substitute teacher every school day during the month of September her salary could not have amounted to $45 per month.

As tending to prove the intent of plaintiff in error in issuing and indorsing warrant No. 3029, the People proved that the following warrants had been issued by plaintiff in

error and the name of the payee indorsed thereon by him without the knowledge or consent of the payee: Warrant No. 3117, dated October 2, 1888; warrant No. 3285, dated November 6, 1888; warrant No. 3413, dated November 28, 1888; and warrant No. 3652, dated December 21, 1888,— all issued to M. E. Shields, as payee, for the sum of $47.50 for teaching. It was also shown that these warrants had been paid by the treasurer of the school board.

Mary C. Shield, who had been a teacher in the public schools of Peoria prior to June, 1888, testified that during the time she was a teacher in the schools her name had appeared upon the records of the school board as M. E. Shields; that after June, 1888, she occasionally acted as a substitute for other teachers, for which she received from the school board $1.50 per day, but that she never received nor indorsed any of the warrants above mentioned. The plaintiff in error admitted issuing these warrants and indorsing the name of M. E. Shields thereon, and as an explanation of his conduct in this regard testified that small bills against the school board were paid by him in cash and the receipts taken by him were afterwards presented to and allowed by the auditing committee of the board; that experience had shown that these items would total about $47.50 per month, and that each month a warrant was issued for that amount in the name of some person other than the plaintiff in error, but that he indorsed the name of such person upon the warrant and received the money thereon; that Mrs. Shield, who had been a teacher in the public schools, resigned in 1885 to permit the employment of her daughter by the school board; that her resignation was necessary in order that her daughter might be employed, because the rules of the board prohibited the employment of more than one person as teacher from the same family; that it was desired that the name of M. E. Shields appear upon the records of the board until her daughter had demonstrated her success as a teacher; that in order

to effect this purpose and to reimburse plaintiff in error
for the cash which he had paid out during the previous
month upon small bills against the school board, a warrant
for $47.50 was issued each month in the name of M. E.
Shields and was paid to plaintiff in error by the treasurer
of the school board. He testified that he continued to use
the name of M. E. Shields in this manner until June, 1889,
and thereafter used other names for the same purpose.
The People, in rebuttal, offered in evidence those portions
of the minute book of the board kept by plaintiff in error
as secretary, showing that the pay-roll of the board for
the month of October totaled $7404.63 and for the month
of November the sum of $7427.13. It was shown by por-
tions of the treasurer's cash book, also offered in evidence
by the People in rebuttal, that the treasurer paid warrants
issued under date of November 6, 1888, for salaries for
October of that year, totaling $7756.03, and warrants is-
sued under date of November 28, 1888, for salaries for
November, totaling $7654.28.

Certain records of the circuit court of Peoria county
were offered by the People in rebuttal, showing that on
November 24, 1905, plaintiff in error had plead guilty to
five indictments charging him with forging certain school
scrip orders or warrants on June 28, 1899, and that judg-
ment and sentence had been pronounced upon such pleas
therein.

The explanations given by plaintiff in error of his acts
in issuing and indorsing warrant No. 3029 and the war-
rants above mentioned which were issued to M. E. Shields
are not corroborated by the testimony of any other witness.
His explanations are in many respects so successfully con-
tradicted by the documentary evidence as to render his tes-
timony unworthy of belief. The evidence not only sustains
the verdict, but in our judgment the plaintiff in error was
clearly proven guilty of the crime charged in the indictment
beyond a reasonable doubt.

In making out the case in chief G. M. Bush was called as a witness by the People. He testified that he is assistant cashier of the First National Bank of Peoria and was a clerk in that bank in 1888; that in 1888 M. E. Bergan was treasurer of the school board and was also teller in the bank in which the witness was employed; that he is acquainted with the handwriting of M. E. Bergan and would be able to identify it. The witness then testified that the entries appearing upon certain pages in the book hereinbefore referred to as the treasurer's book are in the handwriting of M. E. Bergan. It is urged that the court erred in admitting the testimony of this witness concerning the handwriting in the treasurer's book, for the reason that the witness neither testified that he had seen M. E. Bergan write nor that he had seen letters or other documents which Bergan had in the course of business recognized or admitted to be his own. It is not necessary to enter upon a discussion of the question whether the court erred in admitting the testimony of this witness. Plaintiff in error himself identified the book as the book kept by M. E. Bergan, as treasurer of the school board, in which the treasurer kept a record of the warrants paid by him, and concerning those portions thereof which were offered in evidence plaintiff in error testified that all the entries appearing thereon were checked over in his presence by the finance committee of the board and were found to correspond with the warrants which had been issued and paid. This testimony was sufficient to justify the action of the court in admitting the treasurer's book in evidence, and the error, if any, of the court in admitting the testimony of Bush was therefore harmless.

It is next contended that the court erred in admitting in evidence the warrants issued to M. E. Shields. These warrants, in connection with the testimony of Mary C. Shield, tended to establish a criminal intent on the part of plaintiff in error in issuing and indorsing warrant No. 3029.

and were properly admitted in evidence for that purpose. We have frequently held that evidence of the commission of distinct and similar offenses at about the same time is admissible as tending to show the intent and guilty knowledge of defendant. *Anson* v. *People,* 148 Ill. 494; *Juretich* v. *People,* 223 id. 484; *People* v. *Strosnider,* 264 id. 434.

At the close of the People's case in chief plaintiff in error moved the court to require the People to elect upon which count or counts a conviction would be sought, and the action of the court in denying this motion is assigned as error. Each and every count in the indictment was predicated upon the alleged act of plaintiff in error in issuing, indorsing or uttering said warrant No. 3029. Under such circumstances no election between counts should be required. *Goodhue* v. *People,* 94 Ill. 37; *People* v. *Weil,* 243 id. 208; *People* v. *Warfield,* 261 id. 293.

Plaintiff in error contends that the court erred in admitting in evidence the warrants issued by him under date of October 2, 1888, other than those issued to Mary Hay and M. E. Shields. Each of these warrants bore a canceling stamp showing that it had been paid. All of these warrants were identified by plaintiff in error as warrants issued by him, and were properly admitted in rebuttal for the purpose of showing that the warrants issued by plaintiff in error for liabilities incurred by the school board during September of that year, including salaries of teachers, exceeded the liabilities as shown by the records kept by the plaintiff in error as secretary, thereby tending to prove that the testimony of plaintiff in error with reference to the issuance of the warrants to Mary Hay and M. E. Shields was not true.

The People called as a witness in rebuttal Gilbert B. Geiger, who testified that he was familiar with book-keeping; that the treasurer's book, which had been admitted in evidence, showed that under date of October 2, 1888, the treasurer paid warrants issued under date of October 2,

266 — 28

1888, for the salaries of teachers and janitors, totaling $7491.53, that he paid warrants issued under date of November 6, 1888, for such salaries, totaling $7756.03, and that he paid warrants issued under date of November 28, 1888, for such salaries, totaling $7654.28. Plaintiff in error complains that the testimony of this witness concerning the warrants issued under date of November 6 and under date of November 28 should not have been admitted, because it was not shown that the entries in the treasurer's book showing payment of the warrants purporting to have been issued on those dates were correct. The warrants issued under these dates were not offered in evidence, but the plaintiff in error testified that he was present when the auditing committee of the board, in January, 1889, checked over these entries with the warrants that had been paid and found them to be correct. The complaint made by plaintiff in error is therefore without merit.

In rebuttal, the records in the five cases in which the plaintiff in error had in 1905 plead guilty to the crime of forgery were offered in evidence, and it is urged that the action of the court in admitting these records in evidence was error. Plaintiff in error having become a witness in his own behalf, it was proper, by the introduction of these records, to show his conviction of other forgeries for the purpose of affecting his credibility. The statute in express terms so provides. (Crim. Code, div. 13, sec. 6.)

Instruction No. 14 given at the request of the People told the jury that the defendant having become a witness in his own behalf became the same as any other witness, and that his testimony should be subjected to the same tests as are legally applied to the testimony of any other witness; that in determining the degree of credibility that should be accorded his testimony the jury had the right to take into consideration the fact that he is interested in the result of the prosecution; that if, after considering all the evidence in the case, they should find that he had willfully

and corruptly testified falsely to any fact material to the issue in the case, they had the right to disregard his testimony except in so far as it was corroborated by other credible evidence or facts and circumstances appearing in evidence. Objection is made to this instruction upon the ground that it singles out the defendant and calls attention to his testimony, alone. This instruction is substantially the same as the one considered in *Hirschman* v. *People,* 101 Ill. 568, and has been approved in numerous cases subsequently decided. *Rider* v. *People,* 110 Ill. 11; *Siebert* v. *People,* 143 id. 571; *Spears* v. *People,* 220 id. 72; *People* v. *Harrison,* 261 id. 517.

Complaint is made of instruction No. 19 given at the request of the People, which informed the jury that in order to establish the allegations of the indictment in this case it was not necessary for the People to prove that the scrip payable to M. E. Shields, or the indorsement thereon, was forged; that if the jury believed, from the evidence, beyond a reasonable doubt, that the defendant is guilty of forging the scrip payable to Mary Hay, as charged in the indictment, then it is immaterial whether or not the jury believed, from the evidence, that the M. E. Shields scrip was forged. This instruction stated a correct rule of law. Even if an attempt is made to show that the defendant has committed other crimes similar to the one charged in the indictment for the purpose of showing criminal intent, but such other crimes are not proven beyond a reasonable doubt, still if the jury, from other evidence in the case, find that the defendant entertained the criminal intent necessary to be established and that he is guilty of the crime charged beyond a reasonable doubt, they would be justified in returning a verdict of guilty. Moreover, the thirty-sixth instruction given on behalf of plaintiff in error was clearly to the same effect, and he cannot complain of an instruction which lays down the same doctrine contained in one which had been given by the court at his request.

Plaintiff in error offered, and the court refused, an instruction which would have advised the jury that "when a conviction for a criminal offense is shown on circumstantial evidence, the People must not only show by the evidence, beyond all reasonable doubt, that the alleged facts and circumstances are true, but they must be such facts and circumstances as are absolutely inconsistent, upon any reasonable hypothesis, with the innocence of the accused and incapable of explanation upon any other theory than that of the guilt of the accused." The court properly refused this instruction for the reason that a conviction of plaintiff in error was not sought on circumstantial evidence, alone, but there was direct evidence which tended to prove his guilt. The instruction was not applicable to this case, as it was in the case of *Everett* v. *People,* 216 Ill. 478, upon which plaintiff in error relies, and that case, therefore, does not support the contention made by plaintiff in error that the court committed prejudicial error in refusing this instruction.

The other instructions offered by plaintiff in error which were refused by the court were all covered by instructions which were given at his request, and the complaint made of the action of the court in refusing instructions submitted by plaintiff in error is therefore without merit.

Certain portions of the minute book of the school board were offered in evidence by the People and other portions by plaintiff in error. This was the book which was kept by plaintiff in error as secretary of the school board. Plaintiff in error complains of the action of the court in permitting this book to go to the jury without in some effective manner concealing from their view such portions thereof as had not been admitted in evidence. Those portions of the book which were not admitted in evidence are not before us, and we therefore are not advised as to the matters, if any, appearing therein, and for that reason are not in a position to hold that plaintiff in error was in anywise in-

jured by this action of the court. It is incumbent upon one bringing a cause to this court for review not only to show that the trial court has committed some error, but it must also appear that the error was prejudicial. No such showing has been made with reference to the alleged error last above mentioned.

Certain alleged misconduct on the part of the State's attorney during the trial of the case and in his argument to the jury is urged as ground for reversal. It is not of sufficient importance to warrant a detailed consideration thereof in this opinion. It is sufficient to say that the record does not disclose any prejudicial error in this regard.

Plaintiff in error, in urging a reversal of the judgment upon the grounds above considered, calls attention to the fact that he has heretofore been punished, by imprisonment in the penitentiary for a period of nearly eight years, for forging warrants issued upon the treasurer of the school board of the city of Peoria. It is no doubt fair to assume, as stated by plaintiff in error in his brief and argument, that the board of pardons, in releasing him on parole and in subsequently, with the approval of the Governor, discharging him from imprisonment for the crimes for which he had been committed, took into consideration the fact that numerous other indictments had in 1905 been returned against him by the grand jury of Peoria county charging him with forging a large number of warrants other than those mentioned in the indictments to which he had plead guilty, and that the board of pardons considered that eight years' imprisonment in the penitentiary was sufficient punishment for all the forgeries which had been committed by the plaintiff in error while acting as secretary of the school board. This situation, however, is one over which the courts have no control. It can only be considered as a ground for executive clemency by another department of our government. The statutes of limitations do not run against the crime of forgery, and in legal contemplation

plaintiff in error has not yet been punished for the crime of which he stands convicted in this case. We are therefore without power to reverse the judgment on the ground that the punishment which the plaintiff in error has sustained is sufficient to atone for all the forgeries committed by him while acting as secretary of the Peoria school board.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*