(No. 18829.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE M. MOONE, Plaintiff in Error.

*Opinion filed April 20, 1929.*

JOHN OWEN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and ROY D. JOHNSON, (EDWARD E. WILSON, HENRY T. CHACE, MICHAEL A. ROMANO, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, George M. Moone, was indicted by the grand jury of Cook county, in an indictment of four counts, for the crime of forgery. The first count charges that Moone on June 20, 1925, having in his possession a genuine, valid and unpaid check for $179.20, payable to the order of Flanagan & McGurk and signed by Peterson, Turnbull & Co., by W. A. Peterson, drawn on the Drovers National Bank of Chicago, did feloniously, fraudulently and falsely make, alter, forge and counterfeit said check, and that the alteration was in the figures $5979.20. The second count charges that Moone on June 20, 1925, did make, alter, forge and counterfeit a certain check, No. 4181, of Peterson, Turnbull & Co., Union Stock Yards, Chicago, dated Chicago, May 20, 1925, payable to the order of Flanagan & McGurk, in the sum of $5979.20, signed Peterson, Turnbull & Co., by W. A. Peterson, and drawn on the Drovers National Bank of Chicago. The third count charges that Moone on June 20, 1925, did falsely pass as true and genuine a false, altered, forged and counterfeit check as follows, (the same check described in the second count is here described,) well knowing the same to be false, forged and counterfeited. The fourth count charges that Moone on June 20, 1925, having in his possession a genuine, valid and unpaid check for $179.20, payable to the order of Flanagan & McGurk, signed Peterson, Turnbull &

Co., by W. A. Peterson, and drawn on the Drovers National Bank, altered said check, which altered check is in words and figures as follows, (the check described in counts 2 and 3 is here described,) with intent to prejudice, damage and defraud William A. Peterson and William Turnbull, co-partners, the same intent being alleged in the other three counts. Plaintiff in error was twice tried in the criminal court of Cook county. The first trial resulted in a disagreement of the jury. On the second trial he was found guilty by a jury, and after his motions for a new trial and in arrest of judgment were overruled he was sentenced by the court to serve an indeterminate term in the penitentiary. He brings the record to this court for review on error.

The contentions of plaintiff in error in this court are, first, that the court erred in permitting the State, over his objections, to introduce incompetent, improper and prejudicial testimony; and second, that the specific intent to damage and defraud alleged in the indictment is not sustained by the evidence.

On June 20, 1925, plaintiff in error was employed as book-keeper in the office of Peterson, Turnbull & Co., a co-partnership between William A. Peterson and William Turnbull, engaged in buying and selling livestock in the Union Stock Yards, Chicago, and had held that position since February, 1919. A. L. Donahue, employed as a hog salesman by Peterson, Turnbull & Co., as well as the co-partners, had authority to sign checks of that firm. Joseph P. Coates, a hog dealer, had his office with Peterson, Turnbull & Co. and his accounts were guaranteed by that firm. When Coates bought hogs the firm paid for them and when he sold hogs the firm collected the money for them. Coates sometimes bought hogs from Flanagan & McGurk and frequently sold hogs to them. Peterson, Turnbull & Co. issued its checks to Flanagan & McGurk for the hogs so purchased and received checks from that firm for the hogs sold to it by Coates. Donahue some-

times sold hogs for speculators working out of the office of Flanagan & McGurk, and the money for these hogs would be paid to Flanagan & McGurk by Peterson, Turnbull & Co. The evidence in the record, however, shows that there were no large business transactions between Peterson, Turnbull & Co. and Flanagan & McGurk in June and July, 1925. The practice in the office of Peterson, Turnbull & Co. with reference to checks was for plaintiff in error to fill out the checks to be issued by that firm and present them to Peterson, Turnbull or Donahue for signature. Often the checks were presented for signature by plaintiff in error and signed with merely the name of the payee and the amounts for which the checks should be given, written in figures, and after they were signed the amounts for which the checks would be given were written in the other blank space with a check protector by plaintiff in error. Peterson, Turnbull & Co. did all of its banking business with the Drovers National Bank, and frequently, when large amounts of money were paid by that firm for hogs purchased and collections were delayed, the firm's account would be overdrawn at the bank and it would sign demand notes to the bank to cover the deficit. In such cases the bank would call plaintiff in error and he would make out a demand note for the amount requested, in the same manner that he made out checks, to be signed by either Peterson or Turnbull and sent to the bank.

William A. Peterson, one of the members of the firm of Peterson, Turnbull & Co., testified, in substance, as follows: People's exhibit 1, which is the check described in the indictment, bears his signature. He signed that check before it had been detached from the check stub. At the time he signed it, it was made out payable to Flanagan & McGurk for $179.20. The $179.20 was written in ink in the margin, but the body of the check, or the space provided for writing out in full the amount of the check in words, was not filled out. He signed the check about five

o'clock in the afternoon of June 19, 1925, and did not on that afternoon sign a check to Flanagan & McGurk for $5979.20. The check book stub for People's exhibit 1 was filled out in the handwriting of plaintiff in error. This stub, besides the printed matter, has on it in writing, "Flanagan & McG. 5179.20." Witness' signature also appears on People's exhibit 4—a check of Peterson, Turnbull & Co., payable to Eugene Finn, dated June 16, 1925, for $300. At the time he signed that check it was for $30, and he did not on June 16, 1925, sign a check payable to Eugene Finn for $300. He also identified the check stub for People's exhibit 4. The written matter thereon, identified by him as the handwriting of plaintiff in error, is, "E. Finn 300.00." He never received People's exhibit 5, which is a check for $300, dated June 19, 1925, signed by E. J. Finn, payable to George Moone and drawn on the Stock Yards Savings Bank and which is indorsed, "Loretta Moone." He also identified as bearing his signature six other checks of Peterson, Turnbull & Co. payable to Flanagan & McGurk, two dated June 18 and the others dated June 25, June 27, July 6 and July 13, 1925, for the amounts of $1265.70, $5973.12, $6590, $9129, $19,512.40 and $15,-556.33, respectively. These checks were written by plaintiff in error, and when witness signed them they were not made out for the amounts shown on their faces. He also identified as bearing his signature a check dated July 14, 1925, for $27,020.25, payable to the Drovers National Bank, and stated that he did not on that day sign a check in that amount to take up a note at the Drovers National Bank. On July 20, 1925, the firm of Peterson, Turnbull & Co. had a demand note in the Drovers National Bank for $40,000, and after witness had had a conversation with an official at the bank with reference to this note he had a talk with plaintiff in error, in which he asked him if Coates had sent up any tickets for hogs sold. Plaintiff in error said that Coates had not. Witness then asked him to send

a boy down into the yards to have Coates send up some tickets. The next day plaintiff in error did not come to work, and witness did not see him again until some time in September. He testified that his firm had its books audited twice a year, and that he took the report of the auditor to be true and paid very little attention to the books. He also testified that on July 20, 1925, the books of his firm showed that Flanagan & McGurk had been overpaid by certain checks in the neighborhood of $9000; that Flanagan & McGurk had paid his firm $7640; that his firm claimed there was due it from Flanagan & McGurk approximately $2000, and also $3690 that had been paid by that firm direct to Coates for hogs.

Over the objection of plaintiff in error the checks, other than People's exhibit 1, testified about by Peterson were put in evidence by the State, together with Peterson's testimony concerning them, for the purpose of showing other forgeries by plaintiff in error and to prove the intent charged in the indictment. As to those other checks Peterson's evidence does not show that they were all forged by plaintiff in error, but the other evidence in the record does so show and that they were first drawn for less amounts than they now appear to have been drawn for. The other evidence in the record also tends very strongly to show that plaintiff in error and Coates were operating together for the purpose of covering up the shortages of Coates in his accounts and that they both profited thereby, and that Coates disappeared about the same time the testimony of Peterson shows plaintiff in error disappeared.

Eugene J. Finn, a railroad clerk, testified that he had known plaintiff in error for ten years. Over objection he testified for the State that in June, 1925, he borrowed from plaintiff in error $300, which was loaned and paid to him by plaintiff in error with People's exhibit 4. He stated he re-paid the loan to plaintiff in error by check, (People's exhibit 5,) which was cashed and charged to his account.

H. S. Quinn, secretary and treasurer of McCausland, Hoag & Vaughn, testified that his firm did business with Peterson, Turnbull & Co. His firm sold hogs to Coates, and Peterson, Turnbull & Co. paid for them for Coates. Over objection he testified that three checks of his firm payable to Peterson, Turnbull & Co., (People's exhibits 13, 14 and 15,) dated March 19, May 8 and May 12, 1925, for the amounts of $500, $1200 and $1000, respectively, bear his signature. He stated that these checks were issued to return amounts overpaid to his firm by Peterson, Turnbull & Co. on account of hogs purchased by Coates; that he had a conversation with plaintiff in error and told him about the overpayments, and plaintiff in error told him to give checks for the amounts to Peterson, Turnbull & Co.

William Turnbull, a partner in the firm of Peterson, Turnbull & Co., identified as bearing his signature thirteen checks of his firm payable to Flanagan & McGurk. These checks bear various dates from June 29 to July 18, 1925, and are for various amounts, the smallest $7126.19 and the largest $24,711.16. This witness testified that these checks were not made out in the amounts shown on their faces when he signed them, and that they were, except for his signature, the printed matter and the impression of the check protector, in the handwriting of plaintiff in error. This witness also identified as bearing his signature a check of his firm to the Drovers National Bank, dated July 17, 1925, for the amount of $31,007.75, and stated that it was not made out in that amount when presented to and signed by him. James I. Ennis' testimony, hereinafter shown, also bears on the checks testified about by Turnbull.

Arthur L. Donahue, hog salesman for Peterson, Turnbull & Co., was the book-keeper for that firm before plaintiff in error was employed in that capacity. He testified that he had authority to sign checks for that firm. He identified as bearing his signature two checks of that firm payable to Flanagan & McGurk, dated June 13 and July 14,

1925, for the amounts of $7122.60 and $17,114.26, respectively. He stated that the figures and the name of the payee in these checks were in the handwriting of plaintiff in error, and the checks were not made out for the amounts shown on their faces when presented to and signed by him. This witness also identified as bearing his signature a check of Peterson, Turnbull & Co., dated June 30, 1925, payable to the Drovers National Bank in the amount of $75,056.25, and stated the figures thereon were in the handwriting of plaintiff in error and that the check was not made out in that amount when signed by him. He stated, over objection, that in the month of July, 1925, he owed Peterson, Turnbull & Co. $500, and that to pay that debt he gave plaintiff in error a check for $869.21, payable to Bert G. Beckley and by him indorsed, and asked plaintiff in error to credit his account with $500 and give him the balance of $369.21 in cash. Plaintiff in error did so. Witness stated that he knew of his own knowledge that the check for $869.21 was never deposited to the credit of Peterson, Turnbull & Co. in the Drovers National Bank or any other bank. Ennis' testimony bears on the first three checks testified to by Donahue.

H. E. Herrick, assistant cashier of the Stock Yards National Bank, testified from the records of that bank as to the account of plaintiff in error therein, that on July 16, 1925, plaintiff in error deposited by check (People's exhibit 44) $869.21. He identified People's exhibit 44 as being indorsed by his bank to the Continental and Commercial National Bank of Chicago. This exhibit is a check on the Continental and Commercial Bank of Chicago, dated July 14, 1925, signed "John Burnham & Company, Incorporated," payable to Bert G. Beckley and indorsed by him and the Stock Yards National Bank. On cross-examination this witness stated the account of plaintiff in error in his bank was a joint account of him and his wife. His testimony and People's exhibit 44 were received over objection.

George A. Malcolm, vice-president of the Drovers National Bank, testified that the records of accounts of depositors in that bank were kept under his general supervision. From the original record of the account of Peterson, Turnbull & Co. in his bank he testified, over objection, that on June 22, 1925, the account of that firm was debited with the sum of $5979.20 on account of People's exhibit 1, dated June 20, 1925. He also testified that the account of that firm was debited on various dates with the amounts of the various checks heretofore testified to by Peterson, Turnbull and Donahue. He stated that the account of Peterson, Turnbull & Co. was not on the 16th, 17th or 18th day of July credited with the amount of $869.21, and was not on June 22, 1925, credited with the amount of $300. On cross-examination he stated that the account of said firm was credited with the amounts of defendant's exhibits 1, 2 and 3, hereinafter explained.

Frederick B. Andrews, a certified public accountant, testified that he examined the accounts and records of Peterson, Turnbull & Co. in July, 1925. He stated that the books of that company consisted of a ledger, cash book and journal and proceeds journal; that in making his audit he examined those books and check stubs, paid checks, bank statements, bank deposit slips, and sales records and purchase records; that his examination covered the period from July 1 to July 29, 1925. Over objection that proper foundation had not been laid for the evidence, he stated that his examination disclosed that on July 29, 1925, the firm of Peterson, Turnbull & Co. had a shortage of $129,700 and that on July 1, 1925, it had a shortage of something over $100,000; that the liabilities of the firm were greater than its assets, and that part of the assets shown by the books to be owned by the firm were, in fact, non-existent. At this point in the testimony of the witness it developed that in connection with his audit of the accounts of Peterson, Turnbull & Co. he had also examined records outside

of the office of that firm, and because of an objection to his testimony on that ground a hearing was had out of the presence of the jury, at which he testified that he examined deposit slips of Peterson, Turnbull & Co. at the Drovers National Bank, and also examined some of the records of the office of Flanagan & McGurk and the Stock Yards National Bank for corroboration of dates and guidance in making his report. He stated that his report was not made up of anything which he found in the books of Flanagan & McGurk or the Drovers National Bank or the Stock Yards National Bank, but that the records of that firm and those books were merely used for guidance and corroboration of the facts found in the examination of the books of Peterson, Turnbull & Co. He stated, for instance, that he found that duplicate deposit slips kept in the office of the firm of Peterson, Turnbull & Co. in a number of instances showed that certain amounts of currency had been deposited, but that he found the original deposit slips in the Drovers National Bank showed that these amounts had been deposited as checks. When the jury was recalled the witness testified, over objection, that a large part of the shortage about which he testified was made up of a large difference between the amount shown by the ledger to be due to the firm from Coates and the amounts shown by other records in the office of the firm as being the actual amount due from him. He testified that checks payable to the firm had been received and deposited in the bank but that no record was made by which plaintiff in error charged the firm with having received these checks. When they were deposited the records of the firm showed that currency to the amount of those checks had been deposited. This amount of currency taken from the cash drawer was not deposited in the bank. He stated that he examined the checks of Peterson, Turnbull & Co. issued to Flanagan & McGurk between May 18 and July 18, 1925; that a large number of checks, totaling a large sum, were issued

to Flanagan & McGurk and an almost identical amount was issued to and received by Peterson, Turnbull & Co.; that the amount of checks issued to Flanagan & McGurk was $326,356.10 and the amount of checks received from Flanagan & McGurk was $316,565.21; that this practice of exchanging checks is known as "check kiting;" that this term is applied to the practice of two persons having accounts in different banks exchanging with each other checks in the same amount, so that, during the time it is necessary for the checks to clear between the two banks, each of the two persons has on the books of his bank a balance larger than would be the case had all the checks cleared. He stated that the amount of People's exhibit 1, $5979.20, was received back from Flanagan & McGurk by defendant's exhibits 1, 2 and 3, being checks of Flanagan & McGurk dated June 20, June 23 and June 23, 1925, for amounts of $5174.20, $180 and $625, respectively, which were all deposited to the credit of Peterson, Turnbull & Co.

Arthur L. LaForce, a public accountant, testified that he, with two assistants, made an audit of the books and accounts of Peterson, Turnbull & Co. in August, 1925; that it took them over a month to complete the audit; that the audit consisted in examining the records of all transactions from January 1, 1925, to July 23, 1925, and that it extended as to some specific items back to December, 1922. He examined the cash journal and general ledger, the list of accounts receivable and accounts payable, scale tickets, accounts of sales and canceled checks, check stubs, deposit tickets and duplicate deposit tickets, and all other available memoranda and papers in connection with the business. His examination (he testified over objection) disclosed a shortage of over $114,000; that a part of the shortage consisted of disbursements of currency which had been made and not properly accounted for to the amount of over $36,000, and that another part of the shortage was in the account of Coates, which showed an overpayment to him of

$43,000. The witness stated that he examined the items of the cash account with reference to People's exhibits 13, 14 and 15, (the three checks above referred to as having been issued to Peterson, Turnbull & Co. by McCausland, Hoag & Vaughn,) and that he found that two of these checks, the ones for $500 and $1000, had been deposited in the bank but that the receipt of the amount of these checks had not been noted on the books of the firm of Peterson, Turnbull & Co.; that the records of Peterson, Turnbull & Co. showed that these amounts had been deposited in currency and not in checks. He stated, also, that similar procedure had been used in connection with several checks received from Flanagan & McGurk—that is, that these checks had been deposited in the bank but that the records of Peterson, Turnbull & Co. showed that the amount of these checks had been deposited in currency and the cash account credited with a disbursement of the amount of these checks. He stated that this was true with respect to the checks marked defendant's exhibits 2 and 3, from Flanagan & McGurk, dated June 23, 1925. He testified that he had examined the report of Andrews, and that witness' report and that of Andrews reconciled in every respect.

James I. Ennis, who qualified as a handwriting expert, using People's exhibit 3 (the stub of the check of Peterson, Turnbull & Co. to Eugene Finn for $300) as a standard, testified that the figures on People's exhibit 1 were made by the same person who made the figures on People's exhibit 3. He testified that People's exhibit 1 had originally been made out for $179.20 and had later been changed by changing the figure "1" in the hundreds to "9" and putting the figure "5" in front of it, making it $5979.20. As to the three checks concerning which Turnbull testified, Ennis testified that the first one of those checks was originally drawn for $1126.19, was afterwards raised for an amount of $7126.19 and that it is in the handwriting of plaintiff in error; that as to the second of those checks he testified

that it was originally drawn for $11,711.16, was afterwards raised to a check for $24,711.16 and that it is in the handwriting of plaintiff in error; that as to the third one of those checks he testified it was originally drawn for $1007.75, was afterwards raised to a check of $31,007.75, and that the alteration is in the handwriting of plaintiff in error. As to the three checks testified to by Donahue, Ennis testified that the first one was given originally for $122.60, was afterwards raised to a check for $7122.60, and that all of those figures are in the handwriting of plaintiff in error; that as to the second check it was originally drawn for $1114.26, was later raised to a check for $17,114.26, and that those figures are in the handwriting of plaintiff in error; that as to the third check, the original figures on the check denoting the amount that the check was originally given for were erased and he could not tell the amount for which it was originally given, but he stated that the figures now appearing on the check were written over the figures erased and it now appears to be a check for $75,056.25, and that those figures are in the handwriting of plaintiff in error. He gave similar testimony as to a large number of the checks concerning which Peterson testified and as to a number of other checks about which Turnbull testified.

Over the objections of plaintiff in error the State introduced in evidence all of the checks above referred to in this opinion, and the photostatic copies of those checks in the record show them to be stamped "paid," and they corroborate the testimony of Ennis and of the other witnesses above set forth. The general objection was that they were irrelevant and immaterial and that the proper foundation had not been laid for their introduction. Special objection was made to People's exhibit 5 (the check for $300 from E. J. Finn to plaintiff in error) because it bore the indorsement of Loretta Moone, the wife of plaintiff in error, and that she was incompetent to testify; to People's exhibit 4

(the check dated June 16, 1925, to Eugene Finn for $300) because it was drawn prior to the date alleged in the indictment; and to People's exhibits 13, 14 and 15 (the McCausland, Hoag & Vaughn checks) because they were drawn in March and May, 1925, and did not tend to prove the offense charged.

A motion was made by plaintiff in error to strike all of the testimony of the accountants because the books and records from which they made their reports and from which they testified were not in the court room. Later a truckload of books and records was brought into the court room, and Peterson testified that they were all the books and records of Peterson, Turnbull & Co. and Coates submitted to Andrews and LaForce when they made their audits. On cross-examination Peterson stated that none of the records of Flanagan & McGurk, the Drovers National Bank or the Stock Yards National Bank were produced. The attorney for plaintiff in error asked for a continuance of thirty days in which to examine the books and records, which was denied. He then renewed his objection to the testimony of the accountants because the records of Flanagan & McGurk and of the two banks which had been examined were not produced. His motion to strike was overruled.

Plaintiff in error did not testify. He introduced the testimony of six witnesses, who testified, in substance, that his general reputation "for honesty and integrity and as a law-abiding citizen" was good. He also introduced defendant's exhibits 1, 2 and 3—the checks above referred to by which the amount of People's exhibit 1 was returned to Peterson, Turnbull & Co. by Flanagan & McGurk.

The first contention is that the court erred in admitting other checks than the one mentioned in the indictment. In making this contention plaintiff in error recognizes the general rule that in prosecutions for forgery, evidence of similar offenses at or about the time of the one charged may be received in evidence for the purpose of proving the in-

tent charged, but argues that it was improper to allow proof of as many other offenses as was introduced in this case. It is also contended that the time of the commission of some of the similar offenses was too distant from the offense charged to make them admissible.

The rule is well established that in a prosecution for forgery, proof of other offenses similar to that charged, occurring at or about the same time, is admissible for the purpose of proving the intent charged in the indictment. (*People* v. *Dougherty,* 266 Ill. 420; *Anson* v. *People,* 148 id. 494.) This rule is subject to the limitation that proof of similar offenses subsequent to the one charged is not admissible unless there is also proof of a similar offense prior to the one charged. (*People* v. *Moshiek,* 323 Ill. 11.) In this case there were introduced, besides the check mentioned in the indictment, which was dated June 20, 1925, twenty-two other checks of Peterson, Turnbull & Co. to Flanagan & McGurk. Two of these checks were issued on June 18, 1925, and the others after June 20, on different dates, but none later than July 18, 1925. These checks were all issued to the same firm. They were all altered by plaintiff in error after they were signed. They were all issued at or about the time of the check mentioned in the indictment and constituted offenses similar to the one charged. No error was committed in receiving them in evidence.

The check of Peterson, Turnbull & Co. to Eugene Finn, originally written for $30 and changed by plaintiff in error to read for $300, was dated June 16, 1925. No error was committed in receiving it in evidence. The check from Finn to plaintiff in error for $300 was dated June 19, 1925. It was issued to re-pay the loan of plaintiff in error to Finn and was not deposited in the account of Peterson, Turnbull & Co. The contention of plaintiff in error that this check was not admissible because it is indorsed by his wife, who was incompetent to testify, cannot be sus-

tained, because her connection with the check is wholly immaterial in this case. The only pertinent fact about that check is that it was never deposited to the credit of Peterson, Turnbull & Co. It was not error to receive it in evidence.

The three checks from McCausland, Hoag & Vaughn to Peterson, Turnbull & Co., dated March 19, May 8 and May 12, 1925, were received in evidence, over objection, before there was any testimony concerning the manner in which they were handled by plaintiff in error. At the time they were received in evidence they tended to prove absolutely nothing material to the issue in this case. While it was error to receive them in evidence, we do not think that plaintiff in error was thereby prejudiced. Later, when LaForce testified, he stated that while these checks were deposited to the credit of Peterson, Turnbull & Co., the records in the office of Peterson, Turnbull & Co. showed that the amounts of two of them had been deposited as currency and the cash account credited with a deposit of those amounts. The point to this testimony was that according to the records of Peterson, Turnbull & Co. plaintiff in error never charged himself with having received two of these checks, and that while Peterson, Turnbull & Co. got credit at the bank for these two checks, the cash account in their office was at the same time reduced by their amount. No specific objection was made to this testimony of LaForce at the time it was received, and it is therefore unnecessary for this court to determine whether or not those checks, and the testimony of LaForce with regard thereto, were admissible under the rule above stated, allowing proof of similar offenses for the purpose of proving intent in forgery cases.

It is also urged that the court erred in receiving evidence concerning the transaction in which Donahue gave plaintiff in error the check for $869.21, payable to Bert G. Beckley, for which he received credit of $500 on the books

of Peterson, Turnbull & Co. and $369.21 in cash. No forgery was proved in connection with this transaction. It occurred after the offense alleged in the indictment. It was proof of an embezzlement to the amount of $869.21 by plaintiff in error. This proof showed a different offense from the one charged in the indictment, which occurred after the offense with which plaintiff in error is charged, and was incompetent.

Plaintiff in error's contention that the evidence of the accountants, Andrews and LaForce, was improperly admitted in evidence cannot be sustained. The argument is that the proper foundation was not laid for the evidence of these witnesses by showing that the books, documents and papers used by them were so voluminous as to warrant the testimony as to the result of their examination. It sufficiently appears from the record that so many items in accounts, papers and documents were examined in making the reports that their introduction would have been a source of confusion to the jury without expert guidance in the matter of what they showed. It is well established that when the originals consist of numerous documents, books, papers or records which cannot be examined in court and the fact to be proved is the general result of the examination of the whole collection, evidence may be given as to such result by any competent person who examined the documents, provided the result is capable of being ascertained by calculation. (*People* v. *Gerold*, 265 Ill. 448.) The production of the originals, of course, may be required in order that the adverse party may use them for cross-examination. (*People* v. *Sawhill*, 299 Ill. 393; *Welsh* v. *Shumway*, 232 id. 54.) In this case the court did require the State to produce all of the records and papers of Peterson, Turnbull & Co. and of Coates that were used by the accountants in making their audits. Objection was then made that the records and papers of Flanagan & McGurk, of the Stock Yards National Bank and of the Drovers Na-

tional Bank which were examined by the accountants were not in court. It appears from the testimony of the accountants that those records were used only for guidance in making their audits and for corroboration of their conclusions reached from an examination of the records of Peterson, Turnbull & Co., and that what they testified to was the result of an audit of the books and records produced in court. The only material part of the testimony of these witnesses is concerning the shortage caused by the failure of plaintiff in error to charge himself, as book-keeper of his firm, with certain checks payable to his firm and then depositing the checks in the bank and crediting the cash account of his firm with their amounts as cash deposited in the bank. The amount of the shortage and the condition of Coates' account were immaterial. Their testimony concerning the method in which plaintiff in error handled checks received by him for Peterson, Turnbull & Co. was very material on the question of intent and was properly received.

It is further contended by plaintiff in error that the testimony of Malcolm and Herrick concerning what the records of their respective banks showed concerning the accounts of plaintiff in error and Peterson, Turnbull & Co. was improperly admitted because there was no showing made that the entries in those accounts were true and correct. The testimony of Herrick concerned the deposit in the account of plaintiff in error of the check for $869.21, which was given plaintiff in error by Donahue for a credit of $500 on the books of Peterson, Turnbull & Co. and $369.21 in cash. It is only necessary to say that Herrick's entire evidence was incompetent for the reasons already indicated, as it is evidence' of the crime of embezzlement committed after the offense charged in the indictment. The testimony of Malcolm was that the checks of Peterson, Turnbull & Co. introduced in evidence were paid by the Drovers National Bank and charged to the account of Peterson, Turnbull & Co. All those checks show on

their face that they had been paid. This is shown either by stamp or by perforation on the checks themselves. The facts testified to by this witness were therefore shown by competent evidence in the record. His testimony in this regard is merely cumulative, and it is therefore unnecessary to pass upon the specific question whether or not proper foundation was laid for its introduction.

The last contention of plaintiff in error is that the specific intent to damage and defraud, alleged in the indictment, is not shown by the evidence. This contention is without merit, because the proof of intent, as alleged, is overwhelming. The testimony of LaForce shows that two of the three checks received by plaintiff in error for Peterson, Turnbull & Co. from Flanagan & McGurk in return for the check described in the indictment were not entered upon the books of Peterson, Turnbull & Co., and that the amounts of these two checks were credited to the cash account of Peterson, Turnbull & Co. in their office by plaintiff in error. In fact, there was no mention made of these two checks anywhere in the books of his firm by plaintiff in error, but the amount of the cash of his firm was credited or reduced by the amount of these two checks, and that amount of cash was missing and there is no showing by plaintiff in error as to what became of it. The necessary inference is that he took that amount of cash and kept it, as he has offered no evidence in this record in explanation of what became of it. It appears, therefore, from the evidence in the record and beyond all reasonable doubt that Peterson, Turnbull & Co. was actually defrauded by the forgery of the checks described in the indictment.

The competent evidence in the record, as already stated, proves beyond all reasonable doubt that plaintiff in error is guilty of the offense charged in the indictment. It is not the purpose of a reviewing court to determine in a criminal case whether the record is perfect, but to determine whether the accused has had a fair trial and whether

or not his conviction is based upon competent evidence establishing his guilt beyond a reasonable doubt. (*People* v. *Spaulding,* 309 Ill. 292.) Where it can be said from the record that the errors complained of could not reasonably have affected the result of the trial the judgment of the trial court should be affirmed. (*People* v. *Cardinelli,* 297 Ill. 116.) That is the character of the showing in this record, and the verdict of the jury is the only verdict that could reasonably have been expected.

The judgment of the criminal court of Cook county is affirmed.