THE STATE, DEFENDANT IN ERROR, v. MICHAEL ROM-
BOLO, PLAINTIFF IN ERROR.

Submitted August 10, 1916—Decided November 20, 1916.

1. In drawing a jury in a criminal case, from a special panel, the
requirements of section 27 and of section 83 of the Criminal
Procedure act should be strictly followed; and it is error to draw
a jury from the box which contains only the names of a part
of those who constituted the special panel.
2. Where the record of a previous conviction of defendant, for a
crime committed in another state, is offered in evidence pur-
suant to section 1 of the Evidence act (*Comp. Stat., p.* 2217),
full faith and credit must be given to it when properly certified,
even though it contains matters which would form no part of a
judgment record made up in accordance with our own rules and
regulations.
3. A photograph, which was said to have been taken of defendant
while incarcerated in a reformatory, upon the back of which
were endorsements stating that the original thereof was in con-
finement under a charge of burglary, has no probative force;
the endorsements thereon are hearsay, and, consequently, it can-
not be introduced in evidence.
4. In view of the fact that the provisions of *Pamph. L.* 1916, *p.*
576, gives to the jury the power to fix the punishment of one
convicted by them of first degree murder at either life imprison-
ment or death, it is not objectionable for the court to inform
the jury of the power of the court of pardons to override their
verdict by an exercise of the pardoning power.

On writ of error to the Hudson Oyer and Terminer.

For the plaintiff in error, *Richard Doherty.*

For the state, *Robert S. Hudspeth,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The defendant below having
been convicted of the crime of murder in the first degree now
seeks to have that conviction set aside for alleged errors oc-
curring during the course of the trial.

The first reason for reversal urged before us is that the jury which tried him was impaneled in violation of the statutory provisions regulating the matter, and in disregard of his objection. The undisputed facts relating to the drawing of the jury are as follows: A special panel of forty-eight jurors had been drawn from the general panel, pursuant to the requirement of section 82 of the Criminal Procedure act (*Comp. Stat., p.* 1847), for the purpose of trying the indictment against the defendant. When the case was moved the assistant to the sheriff, who was charged with the duty of drawing the jury, placed in the box the names of only thirty-one members of the special panel, and proceeded to draw the twelve names from this number, leaving the names of the other seventeen out of the box, because—as he happened to know—they were then engaged in jury service in other of the county courts. He did this upon his own responsibility, and without notifying either the court or counsel of the situation, until all of the thirty-one names had been drawn from the box. At that time only seven jurors had been selected for service. The court thereupon adjourned until two o'clock in the afternoon, and upon reconvening was informed by the sheriff's assistant that nine of the seventeen jurors whose names had been left out of the box were then present. Upon this information being received the court directed the names of these nine to be placed in the box, and the drawing of the jury to be proceeded with. Three more jurors were obtained from this new drawing, and then—this second division of the special panel having also been exhausted—the court directed the names of the remaining members of the general panel to be placed in the box, and the last two jurors were selected therefrom. The defendant's peremptory challenges were all used before the jury box was filled.

The method provided by the legislature for drawing a jury, either from a general or special panel, is to write or print the name of each member thereof on a separate slip of paper, place all the slips in the box, shake the box so as to intermix the papers, and then draw such papers from the box, one at a time, until twelve persons whose names are writ-

ten thereon (and who have not been excused, or successfully challenged) shall appear. *Comp. Stat., p.* 2975, § 27.

When, in drawing a jury from a special panel in a criminal case, the panel is exhausted, *from any cause,* before a jury for the trial of the indictment is obtained, the law requires that talesmen be taken from the general panel, and that the empty seats in the jury box be filled from them by a drawing in the manner already indicated. *Comp. Stat., p.* 1817, § 83.

Strictly speaking, the names of all members of the panel who have not previously been excused from service should be placed in the sheriff's box, even those who are not present in court when the jury is ordered to be drawn, for some or all of the absentees may appear before their names come out of the box. It may be conceded that a failure in this regard is a harmless irregularity, provided that the names of all of the members of the panel, who answer the roll call, or come into court while the jury is being selected, are put in the box before the drawing of the jury is begun; but we do not doubt the right of a defendant to insist upon this proviso. The statute gives it to him by necessary implication, when it declares that if the special panel "shall be exhausted from any cause" before a jury shall be obtained, talesmen shall be taken from the general panel. The importance to the defendant of having the names of all the persons from whom the jury will be selected placed together in the box is not merely imaginary. The value of his right to challenge, as was said by the Supreme Court in *State* v. *Lapp,* 84 *N. J. L.* 19, 21, depends to a considerable degree upon the order in which the names are drawn from the box, and may be radically affected by placing therein less than two-thirds of the whole number of names on the panel, and then, after exhausting those names, place the remainder (or a portion thereof) of the names upon the panel in the box, and fill up the jury from this second installment.

The method adopted in the drawing of the jury in the present case was a clear violation of the statute, and worked

to the manifest injury of the defendant. The conviction under review must, therefore, be reversed for this reason.

As the case must go back for a new trial, we deem it advisable to refer to certain other causes of reversal which were argued before us.

The defendant, on his cross-examination, was asked if he had not been convicted of the crime of burglary in one of the criminal courts of the State of Pennsylvania. His answer was in the negative. The state then produced a copy of the record of the conviction of the defendant for burglary in the Court of Quarter Sessions for Westmoreland county, in the State of Pennsylvania, duly certified in accordance with the provisions of the act of congress, and offered it in evidence for the purpose of impeaching the defendant's credit as a witness. Its admission was objected to, and the overruling of the objection is set up as a ground of reversal.

Section 1 of our Evidence act (*Comp. Stat., p.* 2217) provides that the state may prove the prior conviction of a defendant who offers himself as a witness, either on his cross-examination, or by the production of the record thereof, for the purpose of affecting his credit. Counsel does not deny the state's right to do this, but insists that, notwithstanding the statute, the paper offered was not evidential, because it contained many matters which have no place in a formal record, including the preliminary complaint made before a justice of the peace, and a letter written by the district attorney to one of the court officers with relation to the subpœnaing of witnesses for the trial. It is true, as counsel contends, that these matters form no part of a judgment record in a criminal case made up in accordance with the rules and regulations of the common law. But that fact is immaterial. Each of our sister states is sovereign, so far as the determination of what shall constitute a proper record in a judicial proceeding had before its courts is concerned. Section 1, article 4, of the federal constitution requires that full faith and credit shall be given in each state to the public records and judicial proceedings of every other state. By force of this provision the courts of this state are bound to accept

the records of the superior courts of our sister states, when properly certified to us in accordance with the act of congress, as being just what they purport to be, and have no power to reject them, when offered in evidence, because they are not made up in the manner prescribed by our own rules and regulations, and contain matters, which according to our ideas of legal rules, would seem to have no proper place therein. It may be that some parts of the record which has been subjected to criticism are not evidential against the defendant; but this we are not called upon to determine. The record of conviction is admissible under our Evidence act for the purpose of affecting the defendant's credit; and, being indivisible, the only way to raise the question suggested is to request the court to instruct the jury to disregard those portions thereof which are claimed to be incompetent as evidence against the defendant. No such request having been made, we are not called upon now even to consider whether such a course would be justified under legal principles.

The state produced and introduced in evidence, over the objection of the defendant, a photograph which was said to have been taken of him while he was incarcerated in a Pennsylvania reformatory. Upon the back of this photograph were certain endorsements, among them that the original thereof was in confinement under a chage of burglary, and that he had violated his parole. We are unable to see that the photograph had any probative value, and consider that, had the contrary been the fact, the endorsements written upon it destroyed its efficacy as an instrument of evidence; for these statements were the veriest hearsay, coming from an unknown source, and not made under the sanctity of an oath. We conclude, therefore, that this photograph should have been excluded upon the objection of the defendant.

It is further contended that the defendant's conviction should be set aside, because the trial court improperly told the jury that the Court of Pardons, if it saw fit to do so, could set the defendant free, or grant him a pardon, if the jury found him guilty of murder in the first degree with a recommendation. The instruction now complained of came

about in the following way: The court, at the conclusion of its charge to the jury, pointed out that the legislature in the preceding winter had passed a law which declared that "Every person convicted of murder in the first degree, his aiders, abettors, counsellors and procurers, shall suffer death, unless the jury at the time of rendering the verdict in such case shall recommend imprisonment at hard labor for life, in which case this and no greater punishment shall be imposed" (*Pamph. L.* 1916, *p.* 576), and instructed them that under this statute it would be their duty, in case they found the defendant guilty of murder in the first degree, to determine whether or not they would make the recommendation. The jury having then retired for the consideration of its verdict, afterward came into court and submitted the following question: "Can a man be pardoned if found guilty of murder in the first degree with recommendation?" The judicial declaration which is now complained of was in answer to this question. No objection was made, or exception taken, to this deliverance, and, therefore, no assignment of error, or reason for reversal could, properly, be based upon it. But, as the matter is one of general importance in view of the legislation referred to by the trial court, it seems to us advisable that we should express our opinion concerning it. Prior to the enactment of this statute the jury in a homicide case had no function to perform, except the ascertainment and declaration of the guilt or innocence of the defendant, and, in case he was found guilty, to declare the degree of his crime. The punishment which should follow the conviction was a matter with which the jury had nothing to do. By force of this legislation, however, an additional burden is put upon the jury, in case they shall adjudge the defendant to be guilty of murder in the first degree, and that is to determine, within the limits fixed by the statute, what his punishment shall be. Naturally one of the elements to be considered by them in determining that punishment is whether, if they shall by their verdict impose life imprisonment, it can be disregarded and set at naught by the Court of Pardons. We see no reason why they should not be informed

.of the power of the Court of Pardons if they so desire, and, as a necessary consequence, we see no impropriety in the trial court, either at the request of the jury, or without such request, apprising that body with relation to the power of supervision possessed by the pardoning tribunal.

For the reasons already indicated the judgment under review will be reversed.

*For affirmance—*None.

*For reversal—*THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 14.