(No. 19035.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILMER KIRCHER, Plaintiff in Error.

*Opinion filed December 20, 1928.*

ROBERT E. KAVANAUGH, (GEORGE W. SPRENGER, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, HENRY E. PRATT, State's Attorney, and ROY D. JOHNSON, (FREDERICK F. BECKMAN, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the circuit court of Peoria county of the charge of robbery while armed with a gun and brings the cause here for review. The indictment charged that on the 25th day of January, 1927, he held up and robbed John J. Connor of a revolver and a black-jack. The indictment was also returned against two unknown persons, but the record does not disclose the arrest of anyone other than plaintiff in error and he alone was tried.

The testimony of the complaining witness is that he is a member of the police department of the city of Peoria assigned to and paid by the Peoria and Pekin Union Railway Company and acting as a police officer in the yards of that railroad company. He testified that about 11:45 on the night of February 1, 1927, while in the performance of his duties near the Peoria and Pekin Union bridge, which crosses the Illinois river, he saw three men coming over the bridge, one of whom was carrying a sack on his back. Witness stopped the man with the sack and asked him what he had in it. He replied that he had chickens. Witness then said he would have to see what was in the sack and started to take the man to Bridge Junction. Thereupon one of the other two men, who had gone on when witness stopped

the man with the sack, turned back and said, "This fellow is all right, buddy," to which witness replied: "You haven't got anything to say about that; just keep out of this; I am going to take this fellow up to Bridge Junction." Witness testified that plaintiff in error then walked away three or four steps and turned and approached witness with a gun drawn and told him to "Stick 'em up." At this the man carrying the sack dropped it and also pulled his gun, saying to plaintiff in error, "Get his gun, Bill." Witness testified that in making the arrest he had a black-jack in his right hand and his gun was in his left coat pocket, and upon demand being made to "stick 'em up" he dropped his gun, which he had taken from his pocket, and his black-jack, and plaintiff in error picked them up. The three then left and witness reported the matter to the police, describing the man who drew the gun on him.

The State's testimony shows that William E. O'Brien, a deputy sheriff of the county of Peoria, had received information that the gun belonging to the complaining witness could be found in the possession of plaintiff in error, and on May 3, 1927, he with four other officers and the complaining witness went to the home of plaintiff in error, on Garden street, in the city of Peoria, with a search warrant. The complaining witness testified concerning this happening that he recognized plaintiff in error the moment he saw him, as the man who had held him up and so stated at that time. After reading the search warrant to plaintiff in error the house was searched, and the revolver offered in evidence on the trial was found under the mattress in a bed, at about the center of the bed. This revolver Connor positively identified as the one taken from him on the night of February 1, 1927. He identified it by a certain mark on it, by the fact that the barrel of the gun was not turned into place in the handle far enough to hide all of the threads, some of the threads on the barrel being exposed, and by a secret number, which was found intact

on the inside left plate of the revolver. Two outside or exposed numbers originally on the gun had been filed off.

At the close of the People's case the defense, by counsel, moved the court to continue the cause for the reason that the indictment charged the offense as having been committed on the 25th day of January, 1927, whereas the evidence showed the offense to have been committed on the first day of February, 1927. The affidavit filed in support of the motion sets out that defendant expected to make the defense of an alibi and had prepared that defense as it related to the 25th day of January, 1927; that he was surprised by the testimony of the complaining witness showing the crime to have been committed on February 1, and that he was unable to proceed to trial because he was unprepared to show his whereabouts on the night of February 1. This motion was filed at two o'clock on Wednesday, during the trial. The court denied the motion for continuance but adjourned the case until ten o'clock of the following Friday. The motion for continuance was renewed on the resumption of the hearing and was denied.

Plaintiff in error took the stand and denied that he had committed the offense charged, and testified that he was at home on the evening of February 1. He introduced three witnesses to show that he was out of the city on the night of January 25. The defense also introduced the testimony of one witness to show the light in the tower, near which the complaining witness had testified the hold-up occurred, threw no light on the outside and that it was dark at that point. Plaintiff in error also testified that he had owned the gun which was taken from him under the search warrant since 1926, and produced the testimony of witnesses to the effect that prior to the date of the crime they had seen a gun in the possession of plaintiff in error similar to the one taken from him by the officers. Plaintiff in error explained the absence of numbers on the outside of the revolver by saying that he was never willing to have a gun

that had numbers on it, because someone might steal it, get into trouble with it and throw it away, and he, plaintiff in error, would have difficulty in explaining the matter. His explanation of the presence of the gun in the middle of the bed, under the mattress, was that it had probably been put there by his wife while making the bed but that he kept it under his pillow.

The grounds on which plaintiff in error contends the judgment should be reversed are, there was a variance between the indictment and the proof as to the time of the commission of the offense, which misled plaintiff in error and caused him to be unprepared to meet the proof brought out on the trial, and that the court erred in refusing to grant him a continuance on his motion, which was based on such variance. It is also contended that the judgment should be reversed because of prejudicial remarks by the State's attorney in his closing argument. Further reasons urged for reversal of the judgment are that the defendant was not proved guilty beyond a reasonable doubt and that the court erred in instructing the jury.

Counsel earnestly argue that the variance between the indictment and the proof and the refusal of the court to grant a continuance by reason of such variance constituted reversible error, for the reason that, the defense being an alibi, plaintiff in error was taken by surprise by the variance as to the date of the alleged crime and was unable to prepare his defense on that ground as to the later date. It is not argued that the law requires proof of the date of an offense precisely as alleged in the indictment but that plaintiff in error was entitled to more time to meet the shift in the date. The time and place of the crime should be stated in an indictment with certainty, though it is not necessary to prove the time precisely as stated unless time is an ingredient of the crime or the running of a statute of limitations is involved. A slight variance as to the date is usually unimportant. If the evidence shows that the crime

was committed at some time prior to the filing of the indictment and within the Statute of Limitations, if there be such, it is usually sufficient proof of the date of the crime charged in the indictment. (*Gebhart* v. *Adams,* 23 Ill. 345; *People* v. *Jackson,* 111 N. Y. 362; Underhill on Crim. Evidence,—3d ed.—par. 81.) The contention of plaintiff in error is that he was prepared to meet the charge against him as to the date alleged by showing that he was elsewhere than at the scene of the crime when it was committed, but that the change of the date left him without preparation of his defense, and that it was error on the part of the trial court to refuse to grant his motion for a continuance on that ground. While it is, as just stated, the general rule that proof of the time of the commission of a crime is not required to be strictly made, yet it is the duty of the State to allege in the indictment the correct date as nearly as possible, and where the defense is an alibi and an incorrect date is alleged in the indictment and a sufficient showing of surprise and inability to meet the variance in the proof is made, it is error for the court to refuse to give the accused sufficient time to prepare the necessary change in defense. The defense of alibi is available only as to the time during which the crime charged is committed. In this case plaintiff in error in his motion for continuance stated that he had prepared his defense as to January 25, and had no reason to know, prior to the taking of evidence, that the complaining witness would testify to a different date from that set out in the indictment, and because of the lack of time he was unable to produce witnesses who would know of his whereabouts on February 1. The court granted approximately two days for such preparation. No new facts were alleged on renewal of the motion after the time allowed by the court and no statement of efforts to obtain witnesses was set out on the renewal of the motion nor any allegation of the absence of witnesses made. Plaintiff in error testified that he was at home on that night, and no

reason appears why he could not have produced witnesses on the trial who knew that he was at home at that time, if there were such, or informed the court of his inability to procure their attendance at the trial. Under the circumstances shown in the record we are of the opinion that the court did not err in confining the additional time for preparation to a period of two days.

It is next urged that the State's attorney committed prejudicial error in argument. The language which forms the basis of this objection is as follows: "He [referring to counsel for defendant] just told you that if you convicted him he goes to the penitentiary for one year to life, but there is another law in connection with that, that says if he is an honest man and made his first mistake he can get probation." Counsel representing plaintiff in error in the trial court objected to this line of argument, and the objection was sustained and the jury admonished to give no heed to the statement. While the abstract does not contain a stenographic report of the argument of counsel for plaintiff in error, if stenographic notes of that argument were taken, it is evident from the language of the State's attorney that it was in answer to an argument of counsel for the accused as to the effect of the verdict. Neither counsel for the accused nor for the State has any right to argue the effect of the verdict of the jury, unless it be in those cases where the jury fixes the punishment. The statute as to punishment has no relation to criminal trials and is a matter with which the jury has nothing to do. The Probation act does not apply to criminal trials but has to do with the punishment to be meted out after verdict. Evidently both counsel for the State and the defense were arguing a matter which should not be argued to the jury. We are of the opinion that under these facts the argument of the State's attorney, while erroneous, was not sufficient to justify a reversal of the judgment.

It is next contended that plaintiff in error was not proved guilty beyond a reasonable doubt. The prosecuting witness was positive in his identification of him as one of the three men who robbed him. The evidence shows, without dispute, that on May 3 the deputy sheriff and other officers, together with the complaining witness, went to plaintiff in error's home and that the complaining witness there identified plaintiff in error as one of the men who had robbed him. The revolver identified as belonging to the complaining witness was found secreted in a bed in plaintiff in error's house. The question of fact was one for the jury, and this court would not be justified on the record in holding that plaintiff in error was not proved guilty beyond a reasonable doubt.

Objection is also made to People's instruction No. 3. This instruction advised the jury that defendant, having become a witness in his own behalf, became as any other witness and his credibility was to be subjected to the same tests; that the jury had a right to take into consideration the fact that he was interested in the result of the prosecution, and if, after considering all the evidence, they found the accused had willfully and corruptly testified falsely to any fact material to the issues in the case they had a right to entirely disregard his testimony except in so far as it was corroborated by other credible evidence or facts and circumstances presented in evidence. It is contended that this instruction unduly singled out the testimony of the accused. In support of counsel's objection they cite *People* v. *Schuele,* 326 Ill. 366. In that case there was a serious question as to whether witness Lick, who furnished the only evidence against the accused, had willfully and corruptly testified falsely, and it was held that from such an instruction, under the facts in that record, the jury might infer that while they were permitted to disregard the testimony of the accused if he had testified falsely, they would not have the right, under the same circumstances, to disregard the testi-

mony of Lick, and that under such circumstances it was erroneous to give the instruction. Such facts do not appear in this record. This instruction, in cases where the accused took the stand, has been frequently approved. (*People* v. *Dougherty,* 266 Ill. 420; *People* v. *Harrison,* 261 id. 517; *Spears* v. *People,* 220 id. 72; *Siebert* v. *People,* 143 id. 571; *Rider* v. *People,* 110 id. 11; *Hirschman* v. *People,* 101 id. 568.) The jury were also instructed that they might so regard the testimony of any witness testifying falsely. This instruction was not error.

Other objections are raised to the instructions, but upon an examination of all the instructions given we are of the opinion that the jury were fairly instructed.

There is no reversible error in the record, and the judgment will be affirmed.

*Judgment affirmed.*