THE STATE v. HARRY KAEMPFER, Appellant.—119 S. W. (2d) 294.

Division Two, August 17, 1938.

Roy McKittrick, Attorney General, and W. J. Burke, Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant was convicted of perjury and received a sentence of seven years' imprisonment in the penitentiary from which sentence he appealed. Appellant was a witness and testified on behalf of Floyd Smith, who was tried for murder. The Smith trial was held on September 4 to 6, 1935, in Scott County, Missouri. The information charged that appellant intentionally testified to material facts in the Smith case, knowing at the time that his testimony was false. Appellant applied for and was granted a change of venue to the Mississippi County Circuit Court. Smith and others were charged with the murder of one W. T. Carlton. A number of the cases growing out of that homicide have reached this court. [See State v. Smith, 339 Mo. 870, 98 S. W. (2d) 572; State v. Claude McGee, 341 Mo. 148, 106 S. W. (2d) 478; State v. Thomas McGee, 341 Mo. 151, 106 S. W. (2d) 480.] Thomas McGee was convicted of perjury for having allegedly testified falsely at the trial of his brother Claude, who was jointly charged with Smith in the murder case. That conviction of perjury was affirmed by this court. Appellant in this case gave evidence in the Smith trial in support of Smith's plea of an alibi. Appellant testified that he was with Smith on the evening of the murder from about 6:30 P. M. until 8:30 P. M., having attended a picture show together in Cape Girardeau, Missouri, and that the two separated a little after 8:30 P. M. The murder was committed at a point about twelve miles from Cape Girardeau, at 9:00 P. M. on that date. Appellant has filed no brief in this case so we will dispose of

the points preserved for our review in the motion for a new trial. Appellant urged that the evidence was insufficient to sustain a conviction of perjury. He contends that the uncorroborated evidence of one witness is not sufficient in law to sustain a conviction of perjury. This we concede. Ira Collins testified for the State. His evidence at this trial was substantially the same as in the case of State v. Thomas McGee. See that case for a detailed statement of his evidence. We held in the McGee case that there was sufficient evidence to sustain the conviction of perjury; that the circumstances, as testified to by a number of witnesses, were sufficient corroboration of the evidence of Ira Collins. Collins testified that he was employed to and did take Smith, Claude McGee and John Manor to the scene of the murder in his car on the evening of May 8, 1935; that they left Cape Girardeau about 7:30 P. M.; that he remained in the car on the road near the Carlton home; that Smith, McGee and Manor left the car; that at about 9:00 P. M. a car drove by going to the Carlton home. Other witnesses, that is, Mrs. Carlton and her two daughters, testified that when they reached home they noticed lights in the house; that Mr. Carlton went to investigate, and immediately after he reached the house they heard shots. Carlton died from shot wounds within a few minutes. Mrs. Carlton and her two daughters testified that Smith was there and remained there about an hour; that he had a revolver and kept all persons under guard, including neighbors who arrived at the scene. These neighbors also testified and identified Smith. Smith left, taking the car belonging to Carlton. A ballistic expert testified that in his opinion the bullet taken from Carlton's body was fired from a revolver taken from Smith when he was arrested. Ira Collins testified that shortly after the car in which the Carltons were riding had passed him he heard a woman scream and immediately thereafter McGee and Manor came running to his car. He stated that he immediately started driving away, but that McGee and Manor wanted him to wait for Smith; that he refused to do so and drove to Cape Girardeau where he left McGee and Manor at their homes.

There is an abundance of evidence, corroborating the evidence of Ira Collins, that Floyd Smith was at the scene of the crime at 9:00 P. M. Appellant, however, urges that Smith could have left him at 8:30 P. M. in Cape Girardeau and still have been at the scene of the murder at 9:00 P. M. That may be true, but there was other evidence, which we detailed in the Thomas McGee case, which corroborates the evidence of Collins that Smith was at the scene of the murder long before 8:30 P. M. The car in which Smith, McGee and Manor were riding was seen parked upon the road near the Carlton place long before 9:00 P. M. Smith was in the Carlton home when the family arrived. The house had been ransacked, which consumed some time.

The State also introduced evidence that a part of the road, between Cape Girardeau and the scene of the crime, was rough. A test was made and it took twenty-five minutes to drive from Cape Girardeau to the Carlton place, traveling at forty-five miles per hour where the road was not rough. Appellant testified that he and Smith left the picture show at 8:30 P. M., walked down the street a short distance and then separated. The evidence in this case was more substantial than the evidence against Thomas McGee, in which case we held the evidence sufficient. The point is ruled against appellant.

■ Appellant also complains that the prosecuting attorney, in his opening statement, was permitted to inform the jury that the State would introduce evidence concerning the murder, which evidence was introduced in the Smith trial. The record does not disclose any prejudicial error in this respect. It was necessary to introduce much of the same evidence. The State to sustain the charge against appellant was required to show the whereabouts of Smith. And since the witnesses, except Ira Collins, saw Smith at the scene of the crime with a revolver in his hands, the State could take no other course than to introduce this evidence. The evidence of Ira Collins was also necessary to show the whereabouts of Smith. It is evident that all this testimony was introduced at the Smith trial. The evidence given by appellant at the Smith trial was also introduced in this case. This was necessary to sustain the charge that appellant had falsely testified at the Smith trial. The record does not disclose that any evidence was introduced with reference to the murder which did not have a bearing on the perjury charge against appellant.

■ Error was assigned because the trial court refused a number of defendant's instructions. These instructions were covered by others which were given. For example, Instruction six, which was refused, informed the jury that the burden was upon the State to prove that Floyd Smith was not in company with appellant on May 8, 1935, as testified to by appellant; and further to prove that appellant was not honestly mistaken in his testimony. Such an instruction was given at appellant's request in the form of a converse instruction, which told the jury that they must acquit appellant unless they found beyond a reasonable doubt that appellant's evidence, given at the trial of Smith, was false and that appellant knew it to be false; that if appellant was mistaken as to the date he was with Smith and was testifying from his best memory then they should acquit. This fully covered all matters contained in the refused instruction. The main instruction, authorizing a conviction, was questioned, but an examination of this instruction discloses that it is not subject to the criticism made against it. The instruction required the jury to find, before authorizing a conviction, all the necessary elements of the crime and that the State was required to prove the charge by at least two credible witnesses, or the evidence of one such witness strong-

ly corroborated by other evidence of facts and circumstances which would convince the jurors' minds of the truth of the testimony of such single witness. It will, therefore, be noted that appellant's rights were amply protected by the instructions of the court.

Appellant also based an assignment of error upon the argument of the prosecuting attorney when he urged the jury to assess a long prison term as a punishment, stating, ''Life imprisonment, with a possibility of a parole, would be about right.'' The record shows that the attorney for the defendant said: ''I object to that.'' The trial court promptly advised the jury to disregard the statement. The trial court did all it was asked, and therefore no error can be predicated upon its ruling. The argument was improper and the trial court ruled correctly. We have examined the record and find it free from error.

The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.