## SHOEMAKER *v.* STATE

[No. 203, September Term, 1961.]

464

Decided May 1, 1962.

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

James R. Scullen for the appellant.

Thomas W. Jamison, III, Assistant Attorney General, with whom were Thomas B. Finan, Attorney General, and William L. Kahler, State's Attorney for Prince George's County, on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The defendant-appellant was indicted for rape and was tried in 1957 before a jury in the Circuit Court for Prince George's County. The jury returned a verdict of guilty, without capital punishment, and the court sentenced the defendant to twenty years' imprisonment. Upon an application under the Post Conviction Procedure Act he was granted a delayed appeal after a hearing before Judge Digges, and this Court denied the State's application for leave to appeal. State v. Shoemaker, 225 Md. 639, 171 A. 2d 468. He urges two grounds for reversal: first, the admission of testimony relating to a complaint made

by the prosecuting witness to a third person, not in the presence of the defendant, within a period which cannot be exactly determined from the record, but which appears to have been within approximately an hour after the alleged attack; and second, allegedly improper remarks by the State's Attorney in his argument to the jury.

In brief, the prosecuting witness, a young woman then about twenty-four years old, accepted an automobile ride from a stranger, the defendant, at about ten o'clock on the night of January 8, 1957, approximately two blocks from a bus terminal in Mt. Ranier, Maryland, where she expected to board a bus to take her to her home. At first the defendant was to take her only to the bus terminal, then she accepted a ride home. After some delay along the route the defendant drove out into an isolated area at Cheverly, Maryland. There, according to the prosecuting witness, he attacked and raped her in the automobile, despite her resistance and despite her efforts to summon help by blowing the automobile horn. The defendant did not deny intercourse, but rested his defense upon the claim that it had been with consent.

After leaving the isolated spot at Cheverly, the defendant drove to a tavern at Seabrook, Maryland. The prosecutrix had told him that she wanted a drink (although she testified that she did not drink) in order to get away from the defendant. She urged him to stop at this tavern and he did so. He offered her his comb "to straighten up," which she attempted to do. He entered the tavern, she got out of the car and looked at the license number, but did not succeed in memorizing it in full. She walked around to the back of the tavern and then entered its front door. As she did so, she was followed by the defendant, who said he had just put the drinks in the car. There was evidence indicating that this was about twenty or thirty minutes after the defendant and the prosecutrix had arrived at the parking lot outside the tavern.

Immediately upon entering the prosecutrix asked the waitress who was then on duty at the bar to call a cab for her. The waitress described the prosecutrix' condition as "very hysterical." The waitress was then busy and said, "Yes, just a moment." The owner of the tavern came over in a few minutes

and the prosecutrix repeated to him her request to call a cab. He noticed that her condition was hysterical and nervous, inquired if someone was "bothering" her, then noticed that her hair and clothing were "messed up" and finally asked her point blank, "Were you raped?" She answered, "Yes." His is the testimony to which the defendant objected and which he claims was improperly admitted.

Both sides have argued the admissibility of this evidence on the basis of whether or not the prosecutrix' statement constituted a part of the *res gestae*. Some courts have treated the admissibility of such testimony on that basis. See Wigmore, *Evidence* (3rd Ed.), § 1139. That is not, however, the rule which usually controls the matter in this State. The question is discussed fully in Wigmore, *op. cit. supra,* §§ 1134-40. In addition to the *res gestae* theory upon which such testimony may be admissible, there are two others, as Wigmore points out. The first of these is that the failure of the woman to make any complaint at the time could be offered in evidence as a virtual contradiction discrediting her present testimony, and hence the prosecution could forestall such an assumption by showing the fact of a complaint. Under this rule as stated by Wigmore only the fact of a complaint is admissible and no details thereof.[1] The second theory stated by Wigmore allows the admission of more than the mere fact of the complaint, if the woman has testified and her testimony has been impeached as false whether by cross-examination or by a defense based upon consent.

Evidence of the victim's complaint made while the alleged injury was recent is admissible in this State. *Murphy v. State,* 184 Md. 70, 76, 40 A. 2d 239. And the limitation of testimony under the first of the above rules stated by Wigmore merely to the fact of complaint, which was applied in *Parker v. State,* 67 Md. 329, 10 A. 219, is not the present law of Maryland. See *Legore v. State,* 87 Md. 735, 41 A. 60, and comment thereon in *Green v. State,* 161 Md. 75, 79-80, 155 A. 164;

---

1. A further refinement of the rule, as stated by Wigmore, is that the woman must first have testified. This is not relevant here, and we do not express any opinion with regard to it.

*Blake v. State,* 157 Md. 75, 81-82, 145 A. 185; *Green v. State,* just cited; *Saldiveri v. State,* 217 Md. 412, 417, 143 A. 2d 70 (an unnatural sexual practices case).

In *Green v. State, supra* (161 Md. at 82), the court made the following statement which is applicable to cases falling within the first of Wigmore's rules above stated and also to cases within the second of those rules. Judge Parke there said:

> "[T]he better rule, and the one more in conformity with our practice and decisions, is that, if the prosecutrix has testified to a violent assault, the fact of the making of complaint within a reasonable time under the circumstances is original evidence, and may be shown to prevent the inference that the woman did in fact maintain a silence inconsistent with her narrative at the trial; and if her testimony of the commission of the alleged crime be impeached by witnesses or by a cross-examination based on the defence that she consented or that her evidence is false, the terms and details of the complaint are admissible, preferably in rebuttal (a), as corroborative evidence, if made recently (b) after the commission of the alleged crime."

The conditions for the admission of the testimony of the tavern owner had been fully met. The woman had testified, and though the printed appendix does not show it, the record does show that her testimony had been attacked by cross-examination on the theory of consent. Under *Green* and *Saldiveri,* there was no error in admitting the tavern owner's testimony.

The other contentions made by the defendant relate to comments or statements made by the State's Attorney in his argument to the jury. The impropriety of only one of the statements complained of appears to have been duly raised at the trial. The State's Attorney virtually invited objection to that one, which related to parole, before making the comment. The objection was promptly made and overruled. We think it was not necessary, in order to preserve the point for review, to renew the objection by motion to strike or for a mistrial when the State's Attorney proceeded to make the argument which

the court had just allowed him to make. Since this particular objection derives additional color from some of the other statements which the appellant seeks to object to on appeal, we shall now state the general nature of all of them.

They are: (i) a reference to the alleged horrors of death in the gas chamber; (ii) that the State's Attorney was perhaps influenced by seeing a little baby that came into the courtroom with its mother [2] in deciding not to seek the death penalty; (iii) statements relating to the possible penalty—a minimum of eighteen months' and a maximum of twenty years' imprisonment—in case of a verdict of guilty without capital punishment; (iv) possible release on parole after, or perhaps even before, the defendant, if convicted, should have served one-third of whatever term of imprisonment might be imposed and the obligation of the Parole Board to consider his eligibility for parole after he had served one-third of the term; and (v) an expression of the prosecutor's belief in the defendant's guilt.

The statements with regard to parole in the context in which they were made here, we think, exceeded the limits of permissible comment by the prosecutor. This Court has never had occasion, as far as we are informed, to consider the question whether remarks relating to possible parole, or similar remarks, constituted reversible error. Of course, each case depends a good deal on its own facts, even where the remarks may fall into the same general classification. References by a prosecutor to the right of appeal, the possibility of executive clemency and parole of a defendant have, however, been considered by many other courts. Although there are decisions each way, we think that the better reasoning and the weight of authority are against the propriety of such arguments. See *Annotation,* 132 A.L.R. 679 (1941); 53 Am. Jur. *Trial* § 466 and cases cited; 23A C.J.S., *Criminal Law,* § 1107, and cases cited. One reason in support of what we think is the better rule is that arguments should be based upon the evidence (*Toomer v. State,* 112 Md. 285, 76 A. 118), but the principal

---

2. The identity of these persons is not stated in the record extract. Examination of the transcript of the State's Attorney's argument indicates that they were the wife and child of the defendant.

objection to arguments of this type goes even deeper and is exemplified, we think, in the present case.

The chief vice of the reference in this case to the possibility of parole is that it suggested to the jury that it might in part shift its responsibility for a finding of the defendant's guilt to some other body. Here the prosecutor specifically told the jury that he was not asking for the death penalty, so that, assuming that the jurors would follow his suggestion (which they did) that they find the defendant guilty "without capital punishment", they would have no function in determining the length of the sentence of imprisonment within the statutory limits, that being the problem of the judge. In the context of the prosecutor's request for mercy by asking the jury to spare the defendant from capital punishment, the natural tendency and effect of the statements about parole was to suggest to the members of the jury that they might resolve any question about the defendant's guilt beyond a reasonable doubt with the thought that, even if they made a mistake, no great harm would be done since he might soon be paroled.

A number of the cases in which an argument relating to parole, executive clemency or the like has been held permissible have been cases in which, under applicable law, the jury has a function (sometimes to the exclusion of the judge) in fixing the penalty. See *McLendon v. State,* 205 Ga. 55, 63, 52 S. E. 2d 294, and *Sullivan v. State,* 47 Ariz. 224, 55 P. 2d 312, as examples of such cases. In the latter case the prosecutor argued that the average "life" sentence was terminated after a few years by a pardon or parole, and was evidently contending for the maximum penalty, death, and not for the penalty of life imprisonment. Clearly, this involved no effort to have the jury shift responsibility in case of doubt to someone else. Authorities from several other states — Alabama, California, Colorado and Washington—are cited in support of the court's conclusion.

In Georgia, a distinction was for a time drawn between comments relating to parole or the like made by the trial judge and similar comments made by the prosecuting attorney, the former being held to amount to reversible error (*Thompson v. State,* 203 Ga. 416, 47 S. E. 2d 54) and the latter not to (*Mc-*

*Lendon v. State, supra; Strickland v. State,* 209 Ga. 675, 75 S. E. 2d 6). In *Bland v. State,* 211 Ga. 178, 84 S. E. 2d 369 (1954) a sharply divided court applied the *McLendon* rule to comments by the trial judge. This was followed by a 1955 statute prohibiting any attorney from arguing to a jury in a criminal case that the defendant, if convicted, might not be required to suffer the full penalty imposed by the court or jury because pardon, parole or executive clemency might be granted. Following the enactment of this statute, *McGruder v. State,* 213 Ga. 259, 98 S. E. 2d 564 came before the Supreme Court of Georgia. In that case the jury inquired whether, if the defendant should be found guilty "in the first degree" of robbery by force, the jury could be assured he would serve "the minimum amount that the jury could give him." The trial judge replied that that was a question of administration resting with the prison board and the Governor, with which the courts had nothing to do, and added "so whatever punishment you fix it will be that unless and until it is disturbed by the parole or pardon board, and that is as far as I can go with you, gentlemen." 98 S. E. 2d at 568-69. The Supreme Court in an able opinion by Justice Head held that the inclusion of the statement "unless and until it is disturbed by the parole or pardon board" constituted reversible error. In reaching this conclusion the court relied on the statute above referred to as establishing "the policy of the law that the jury should not be influenced in a criminal case in the rendition of their verdict by a consideration of the fact that the penalty imposed by them might be commuted by the State Board of Pardons and Paroles." (98 S. E. 2d at 569.)

A somewhat similar result has been reached in New Jersey, where also a statute was involved. There a 1916 statute fixed death as the penalty for first degree murder unless the jury should recommend life imprisonment. In *State v. Rombolo,* 89 N. J. L. 565, 99 A. 434 (Ct. of Errors and Appeals, 1916), a conviction was affirmed, where the trial court in response to a question from the jury, stated that a defendant convicted with a recommendation could be pardoned. A second case (*State v. Martin,* 92 N. J. L. 436, 106 A. 385) produced a

sharp division of opinion (8-6) on a related question under the 1916 statute. This was followed almost immediately by an amendment of the 1916 statute. A statement accompanying the amending bill referred specifically to the *Rombolo* and *Martin* cases, but *Rombolo* was followed for some years. In 1958, in a comprehensive and able opinion by Chief Justice Weintraub the Supreme Court of New Jersey construed the applicable statute and overruled *Rombolo,* and set forth a form of reply which it would be proper for the trial judge to give if the jury should make an inquiry about parole, which includes an explicit statement that "the subject of possible parole must be excluded from your deliberations." *State v. White,* 27 N. J. 158, 142 A. 2d 65, at 76-77. See also *State v. Mount,* 30 N. J. 195, 152 A. 2d 343, involving both questions asked of prospective jurors on their voir dire and instructions to the jury.

In California in cases tried before a jury where the penalty may be either death or life imprisonment, the jury determines which the penalty shall be. Prior to 1957 reference to parole was permissible in argument or in instructions of the court as relating to the penalty, but not in determining guilt. *People v. Barclay,* 40 Cal. 2d 146, 252 P. 2d 321; *People v. Riser,* 47 Cal. 2d 566, 305 P. 2d 1, 11; *People v. Linden,* 52 Cal. 2d 1, 338 P. 2d 397, 409. (We suppose that such a distinction may have been difficult to make effective in practice.) In 1957 a statute was enacted which provided for separate determination of guilt and of punishment, the former to be made first. (Cal. Penal Code § 190.1.) Since that statute became effective, it has been held proper for the prosecutor to argue the matter of parole after conviction when the jury is determining the penalty. *People v. Robillard,* 55 Cal. 2d 88, 358 P. 2d 295, 303. We have found no case in California tried after the effective date of the 1957 enactment involving any argument or statement relative to parole which has been made during the determination of guilt stage of the trial, and we assume that the statute has ended such arguments in that phase of a case involving a possible death penalty.

Provisions by which a jury may limit the punishment so as to prevent the imposition of the death penalty in first degree

murder cases similar to the provisions of Sec. 413 of Article 27 of the Maryland Code (1957) are found in other States, including California, Georgia, New Jersey (referred to above) and also Pennsylvania. The provisions of Section 463 of Article 27 of our Code relating to the penalty for rape are similar.

In Pennsylvania, which did not have a statute similar to those in Georgia or New Jersey, which influenced the more recent decisions above cited, or similar to the 1957 California Act, the same result has been reached in a first degree murder case, where the trial court, in answer to an inquiry from the jury as to the eligibility of the defendant for parole, stated that there could be no parole, but that a pardon could be granted or a sentence could be reduced by the Pardon Board. This answer was held to be "well calculated to lead the jury to believe that if it resolved a reasonable doubt of defendant's guilt against him, the Board of Pardons would make a timely correction * * *." *Comm. v. Mills,* 350 Pa. 478, 39 A. 2d 572, 576.

See also *Midgett v. State,* 216 Md. 26, 37, 139 A. 2d 209, dealing with a communication from the court to the jury with regard to the sentence. And see Annotation on *Possible Pardon,* 35 A.L.R. 2d 769, dealing with responses by the court to inquiries by the jury.

Because of the peculiar provision of the Maryland Constitution under which the jury is the judge of the law as well as of the facts, many cases from other jurisdictions dealing with statements of the trial court to the jury may not be directly in point here. However, this does not mitigate the consequence of an improper statement of the prosecutor. Cf. *Dick v. State,* 107 Md. 11, 68 A. 576, where the trial court made it clear to the jury that his own view of the law was advisory only, but did not instruct the jury to disregard a statement of the prosecutor that the court's view of the construction of a statute reached in ruling upon the admissibility of evidence foreclosed consideration of that question by the jury.

In *State v. Little,* 228 N. C. 417, 45 S. E. 2d 542, a conviction was reversed because of an argument by the prosecutor to the effect that there could be an appeal, that the defendant could also go to the Governor for clemency, and that only sixty per cent of the persons convicted of capital offenses were

ever executed. See also *State v. Hawley*, 229 N. C. 167, 48 S. E. 2d 35; and *State v. Dockery*, 238 N. C. 222, 77 S. E. 2d 664, both generally similar cases.

Reaching a similar result is *Broyles v. Comm.*, 267 S. W. 2d 73 (Ky. Ct. of Appeals), where a conviction was reversed even though the trial court admonished the jury to disregard remarks of the prosecutor relating to parole. Cf. *People v. Sherwood*, 271 N. Y. 427, 3 N. E. 2d 581, involving the possibility of application for executive clemency as a means of salving the jury's conscience if it convicted the defendant. Cf. also *People v. Johnson*, 284 N. Y. 182, 30 N. E. 2d 465, where the prosecutor commented on the defendant's right of appeal and the state's lack thereof, and *People v. Esposito*, 224 N. Y. 370, 121 N. E. 344, a similar case. To like effect, see *Crow v. State*, 33 Tex. Crim. Rep. 264, 26 S. W. 209. See also *State v. Kaempfer*, 342 Mo. 1007, 119 S. W. 2d 294, where reference to parole was held improper, but the error was cured by an admonition from the court.

In the instant case the prosecutor's request (to which the jury acceded) that the death penalty be not imposed, for practical purposes (even though not theoretically), took the case out of the class of cases in which the jury had any function in fixing the penalty. In such circumstances we deem the opinion of the Supreme Court of Florida in *Blackwell v. State*, 76 Fla. 124, 79 So. 731, quite apposite. There reference to possible future action of the pardon board and to the defendant's right of appeal were held improper and grounds for reversal. Also holding reference to parole improper are *People v. Klapperich*, 370 Ill. 588, 19 N. E. 2d 579 (reversible error); and *People v. Kircher*, 333 Ill. 200, 164 N. E. 150 (error cured by admonition of trial judge). These cases, we believe, accord with the weight of authority referred to at the outset of our consideration of this phase of the case. Many cases may be found through the citations contained in the general works there referred to.

In the present case we think it clear that the argument based upon parole was improper, and that the jurors "were likely to have been * * * influenced to the prejudice of the accused," (*Kellum v. State*, 223 Md. 80, at 88, 162 A. 2d 473,

quoting from *Wood v. State,* 192 Md. 643, 652, 65 A. 2d 316),
by the remarks in this case. Accordingly, the judgment must
be reversed and the case remanded for a new trial.

Since the case must be remanded for a new trial, we have
already expressed our opinion on the evidence question which
is likely to recur, and we shall comment briefly on the other
objections to the State's Attorney's argument, which also
might recur.

The reference to the alleged horrors of death in the gas
chamber had no place in the argument, nor did the reference
to the baby. Both of these seem to have tended to hold out ap-
parent mercy with regard to the death penalty as a means of
aiding in securing a conviction without capital punishment. We
find no error in the statement with regard to the possible
penalty. The appellant relies wholly on Code (1951), Art. 27,
§ 559 (§ 463 in the 1957 Code) and overlooks § 557 of the
same Article of the 1951 Code (§ 461 of the 1957 Edition).

We find no error under our decisions in that portion of the
State's Attorney's argument in which he expressed his belief
in the defendant's guilt. It appears to have been based upon the
evidence in the case and hence was permissible. *Riggins v.
State,* 125 Md. 165, 93 A. 437; *Apple v. State,* 190 Md. 661,
666-67, 59 A. 2d 509; *Cicero v. State,* 200 Md. 614, 92 A.
2d 567.

> *Judgment reversed, the costs to be paid
> by the County Commissioners for Prince
> George's County; and case remanded
> for a new trial.*

HAMMOND, J., filed the following dissenting opinion.

I dissented from the reversal in this case because to me the
probability that there was any prejudice to the defendant in
the remarks of the State's Attorney as to parole was, on the
record, so slight as to be almost nil.

The State's Attorney, Blair Smith, said to the jury in the
early part of the opening argument, referring to the State:
"[W]e carry the burden of proof in every criminal case, and
it never shifts. We must prove everything beyond a reasonable

doubt, all elements of the crime." Later in his argument, after discussing the evidence, he told the jury that the offense of rape carried a possible death penalty but that the State was not asking this penalty. He then read Sec. 463 of Art. 27 of the Code (1957) as follows: "The jury which finds any person guilty of rape * * * may add to their verdict the words 'without capital punishment,' in which event the sentence of the court shall not exceed twenty years in the penitentiary," and then added: "So if this jury were to feel that this man is guilty and if this jury were to recommend mercy without capital punishment, the punishment of this man could not exceed twenty years."

There was then an objection by counsel for the defendant, which was overruled, and the State's Attorney continued, telling the jury that after a convicted man has served one-third of his term: "[I]t shall be the duty of the parole board to bring this man up *for consideration* for parole. So after six and a third years this man must come up *for consideration* for parole" (emphasis added), and then said: "[I]f you recommend 'without capital punishment' the court has no alternative than to give him from eighteen months to twenty years." This was all that was said on the matter of sentence in the opening argument.

The State's Attorney did no more than tell the jury the law of Maryland, a State where the jury is the judge of both the law and the facts, and his statements were neither incorrect nor inaccurate. His suggestion was that there would have to be consideration of parole, not that parole necessarily would be granted.

When the defense counsel made his appeal to the jury, he said that in deciding whether or not the accused had committed the crime, they must consider that he might possibly be executed or "interred in a prison or penitentiary for a good many years, if not the rest of his natural life." He then said: "But this boy is at the bar of justice. If you find him not guilty you send him home to his wife and child a penitent man who has learned a very bitter lesson * * *. You either want to incarcerate him for a long number of years or you want to send him home to his wife. It is a cute trick for Mr. Smith to say

'I don't want the death sentence; just give him twenty years.' I wonder how Blair Smith would feel if he spent four or five days in jail, or four or five years, or perhaps the rest of his life. It isn't that easy."

The closing argument for the State was made by an Assistant State's Attorney, Mr. Smith having been excused at the close of his agrument to try another case. The Assistant State's Attorney said, after commenting on the defense counsel's argument and referring to the facts: "Basically, of course, in considering the guilt or innocence of anyone, *you do not consider as an element of the crime as to what his penalty may be.* Mr. Smith told you he was not asking the supreme penalty. And I think that is because she was not permanently mutilated physically. * * * and this was not an extremely violent crime. So if I were in your position, when I would come out I would have a finding of guilty, and say 'without capital punishment,' because I don't think that this is the type of case that merits the death penalty. Even in rape we have different degrees of severity, and that is why the law is so elastic. *But primarily, the penalty is not for your consideration.* It is all right that you should know what is involved. You can get as little as eighteen months, or you can get up to twenty years." (Emphasis added.)

It would seem clear that such emotional appeal to the jury on the possible shortness or length of sentence as there was in the opening argument for the State and the argument of the defense counsel offset each other. The closing argument of the State made it crystal clear to the jury that the State's contention was that the matter of the penalty was not for the jury to consider, but only the question of guilt or innocence, although it was proper for the jury to know the minimum and maximum sentence that could be imposed.

I can see no prejudice to the defendant in what transpired and would affirm the judgment and sentence appealed from.