THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOUIS TOMASELLO, Defendant-Appellant.

Second District   No. 2—86—0572

Opinion filed March 3, 1988.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan, and James E. Sternik, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Louis Tomasello, was charged with unlawful possession of more than 500 grams of a substance containing cannabis, unlawful possession of cannabis with intent to deliver, and unlawful production of the *Cannabis sativa* plant, in an indictment returned by a Lake County grand jury. After a jury trial, he was found not guilty of unlawful possession of cannabis with intent to deliver but guilty of unlawful possession of more than 500 grams of a substance containing cannabis and unlawful production of the *Cannabis sativa* plant. The circuit court of Lake County sentenced defendant to serve a 24-month term of probation, to pay a $500 fine and court costs, and to perform 500 hours of public service work unless he was employed full time by his father's business for a period of six months. Defendant appeals from this judgment.

Defendant contends on appeal that the State failed to prove his guilt beyond a reasonable doubt of the offenses of which he was convicted and that his convictions should therefore be reversed. We af-

firm in part, reverse in part, reduce the degree of one of the offenses of which defendant was convicted, vacate the sentence, and remand for resentencing.

Five witnesses testified at defendant's trial: Theodore G. Joslun, Danny A. Kitterman, Steven Hansen, and Steven Harvey for the State; and defendant for himself. Their testimony and the other evidence admitted at trial tended to establish the following facts.

Defendant, Kitterman and Hansen met at work and decided to live together. Accordingly, defendant and Hansen signed a lease dated August 17, 1985, to rent a three-bedroom house for one year. Joslun, an agent of the house's owners, received the September rent from defendant and Hansen and subsequently (on October 1) received the October rent from Hansen. Each of the three housemates had a bedroom, and they shared the rest of the house. Shortly after moving in together, the housemates began to experience problems getting along with each other, and by November 15, 1985, all either had moved, or were moving, out of the house.

When they moved into the house, the basement contained only a washer, a dryer, and a furnace. Later, it also contained a large amount of marijuana. There were (by October, according to Hansen) several marijuana plants in planters. Two large grow lights, one of which Hansen helped defendant carry into the basement, were installed and connected to timers. In addition to the live plants there was also cut marijuana. Although Kitterman and Hansen pleaded guilty to possession of cannabis pursuant to plea agreements requiring them to testify at defendant's trial, they both testified that they had never tended the plants. Hansen had never seen Kitterman tend the plants and had observed defendant water the plants.

As was noted previously, almost from the start of their occupancy of the house the three housemates had difficulties with each other. Apparently by November 15, none of the three were staying at the house on a regular basis. Kitterman testified that defendant moved out in late October and that he had taken most of his personal belongings. Kitterman was not sleeping in the house in November and had never seen defendant sleep there in November. Hansen was living in the house on and off in November. Hansen testified that defendant moved out of the house in late October or early November, within a couple of days of November 1, and that he did not believe he ever saw defendant in the house at any time in November. According to Hansen, when he moved, defendant took his TV, VCR, bed, dishes, pots and pans, and all of his clothing, but left behind some books and record albums. Joslun, the agent for the owners of the house, last had

personal contact with any of the housemates on October 1 when Hansen had paid the rent. At the end of October or the first part of November Joslun, while driving past the house, had seen defendant's automobile in the driveway. Joslun certainly did not see defendant at any time after November 10 and was not positive he had seen defendant at all during November.

Defendant testified that at no time after November 1 did he ever live in, or even go to, the house. He lived in Kenosha, Wisconsin, after November 1. At first, he lived with his new roommate, James Rzeplinski, at Rzeplinski's mother's house in Kenosha while their new apartment was cleaned and repainted. On November 13, he and Rzeplinski moved into the new apartment, which was also in Kenosha, where he was living on November 15. Defendant signed a lease for the Kenosha apartment, the term of which included the date November 15, 1985, and a copy of this lease was admitted into evidence. Defendant was in the house for the last time on November 1, 1985, when he was there to remove his personal possessions. While he was there, he gave Hansen his key to the house. Defendant, Hansen, and Kitterman were in the kitchen. Hansen had his hands full, so defendant placed the key on a counter for Hansen, and Hansen picked it up later.

On November 15, 1985, evidence technician Steven Harvey and another Waukegan police officer, accompanied by Joslun, entered the house pursuant to a search warrant. In the basement, there were several piles of green leafy plants, loose foliage, and 16 plants on tables near grow lights which were plugged into operating timers. The parties stipulated that, if called, Northern Illinois Crime Lab chemist Lisa Haley would testify that she found that the plant material from the basement was well over 500 grams of a substance containing cannabis.

The night of November 15, 1985, Kitterman, Hansen, and a third person (who was not defendant) went to the house to sleep overnight. They planned to move personal belongings out of the house the next day. Instead, they were arrested on charges related to the marijuana found in the basement. Charges against the third person were eventually nol-prossed by the State. Although not arrested at the house that night, defendant was also charged in connection with the marijuana and apparently waived extradition after being arrested in Wisconsin.

■ Defendant argues that the State failed to prove beyond a reasonable doubt his guilt of the offenses of which he was convicted. The indictment alleged that the offenses occurred "on or about November 15, 1985," and the parties have both argued this issue largely in

terms of what the evidence established with respect to that date. However, it is well established:

"Proof of the precise date as alleged is unnecessary unless the allegation of a special time is an essential ingredient of the crime or the running of the period of limitation. [Citations.] In the prosecution of a criminal offense, the date alleged in the indictment as the time of the commission of the offense may thus be shown to include any time within the period prescribed by law for the prosecution of the crime." (*People v. Taylor* (1945), 391 Ill. 11, 14, 62 N.E.2d 683, 685, *cert. denied* (1946), 326 U.S. 784, 90 L. Ed. 476, 66 S. Ct. 333.)

(See, *e.g.*, *People v. Alexander* (1982), 93 Ill. 2d 73, 77-78, 442 N.E.2d 887, 889; *People v. Johnson* (1949), 404 Ill. 33, 34-35, 87 N.E.2d 864, 864-65; *People v. Kircher* (1928), 333 Ill. 200, 204-05, 164 N.E. 150, 152; *Gebhart v. Adams* (1860), 23 Ill. 345, 347.) Since a special time is not an element of either of the offenses of which defendant was convicted, the jury could properly have convicted defendant of those offenses on proof that they occurred on some date prior to the filing of the indictment (December 19, 1985) and within the statute of limitations. *E.g.*, *People v. Kircher* (1928), 333 Ill. 200, 204-05, 164 N.E. 150, 152.

■ Defendant was convicted of unlawful possession of more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 704(e)) and of unlawful production of the *Cannabis sativa* plant (Ill. Rev. Stat. 1985, ch. 56½, par. 708). The elements of these offenses differ significantly from each other. Therefore the sufficiency of the evidence to convict defendant of each of them will be considered separately.

Section 8 of the Cannabis Control Act provides:

"Any person who knowingly produces the cannabis sativa plant is guilty of a Class A misdemeanor." (Ill. Rev. Stat. 1985, ch. 56½, par. 708.)

Section 3 provides in part:

"As used in this Act ***:

\* \* \*

(j) 'Produce' or 'production' means planting, cultivating, tending, or harvesting." (Ill. Rev. Stat. 1985, ch. 56½, par. 703.)

The testimony of Kitterman and Hansen was sufficient to establish that defendant had knowingly cultivated or tended the plants in the basement of the house at some time between August 17, 1985 (when they leased the house), and November 1, 1985. The testimony of the

witnesses who saw the plants, and the stipulation as to the testimony chemist Lisa Haley would give if called, was sufficient to permit the jury to conclude that they were *Cannabis sativa* plants. Therefore, the evidence was sufficient for the jury to find defendant guilty of knowingly producing *Cannabis sativa* plants at some time prior to November 1, 1985.

Section 4 of the Cannabis Control Act provides in part:

"It is unlawful for any person knowingly to possess cannabis. Any person who violates this section with respect to:

(a) not more than 2.5 grams of any substance containing cannabis is guilty of a Class C misdemeanor;

\* \* \*

(e) more than 500 grams of any substance containing cannabis is guilty of a Class 3 felony." (Ill. Rev. Stat. 1985, ch. 56½, par. 704.)

Defendant was found guilty of the Class 3 felony of possessing more than 500 grams of a substance containing cannabis.

From the testimony of Kitterman and Hansen the jury could have concluded that, at least prior to November 1, 1985, defendant possessed the plant material knowing it contained cannabis, and, from the stipulation as to chemist Lisa Haley's testimony, the jury could have concluded that the plant material did in fact contain cannabis. Thus, the jury could properly have found that, before November 1, 1985, defendant had knowingly possessed cannabis in violation of section 4 of the Cannabis Control Act. (Ill. Rev. Stat. 1985, ch. 56½, par. 704.) However, the jury could not properly find beyond a reasonable doubt that the substance containing cannabis had weighed more than 500 grams at a time before November 1, 1985. Although it was stipulated that the material seized on November 15, 1985, weighed more than 500 grams, it must be remembered that the substance was mostly growing plants. There was no evidence as to the rate at which those plants would have grown between November 1 and November 15, so there was no evidence on which a jury could base a finding as to the weight of the substance containing cannabis which defendant possessed prior to November 1, 1985. Therefore, the evidence with respect to defendant's possession of cannabis before November 1, 1985, would support a conviction for a Class C misdemeanor (Ill. Rev. Stat. 1985, ch. 56½, par. 704(a)) but not the Class 3 felony (Ill. Rev. Stat. 1985, ch. 56½, par. 704(e)) of which he was convicted.

It is therefore necessary to determine whether the evidence was sufficient to establish that defendant knowingly possessed more than 500 grams of a substance containing cannabis on November 15, 1985,

when the material was seized. The evidence was sufficient to establish that the substance contained cannabis; that defendant knew it contained cannabis; and that it weighed more than 500 grams on November 15, 1985. Thus, as the parties in their briefs have recognized, this issue comes down to whether the evidence was sufficient to establish defendant's possession of the substance on November 15, 1985.

■■ Defendant contends that "the State's theory in this case was that the defendant was guilty of the offense through constructive possession" and argues the evidence was insufficient to prove his guilt under that theory. The State contends:

> "The defendant's assertion that the People's theory of guilt was through constructive possession is only partly correct. The defendant fails to discuss the theory of constructive *joint* possession."

The evidence was insufficient to establish beyond a reasonable doubt defendant's constructive possession, whether sole or joint, of the cannabis on November 15, 1985.

It is established:

> "To sustain a conviction on the basis of constructive possession, it must be shown that the defendant, although not having personal physical dominion, has the intent and capability to maintain control and possession *** of the contraband." (*People v. Turnbeaugh* (1983), 116 Ill. App. 3d 199, 205, 451 N.E.2d 1016, 1020.)

(*People v. Ciconte* (1968), 102 Ill. App. 2d 1, 6-9, 243 N.E.2d 407, 409-10.) In the case at bar, the State failed to establish that defendant had the intent and capability to maintain control and possession of the cannabis on November 15, 1985.

Defendant testified that he had moved out of the house and the last time he was there was on November 1, 1985. This was corroborated by Hansen and Kitterman who, testifying for the State, stated that defendant had moved out in late October or early November. It was also partially corroborated by Joslun, who testified that he had seen defendant's car parked outside the house on about that date and by the lease admitted into evidence showing defendant was a lessee of a Kenosha, Wisconsin, apartment for a period that included the date November 15, 1985.

■■ ■ Moreover, it was defendant's unrebutted and unimpeached testimony that he, in the presence of Kitterman, had given his house key to Hansen when he was last at the house on November 1. With respect to this testimony, the State, without citation to authority, argues:

"The question as to whether the defendant had abandoned access to the premises by leaving a key on a countertop is purely one for the jury and is not 'a given' as suggested by the defendant. That fact was never established by anything other than the uncorroborated statement of the defendant and the jury did not have to accept it as fact."

This is incorrect. It is well established:

"The general rule undoubtedly is that positive testimony of a witness, uncontradicted and unimpeached—either by positive testimony or by circumstantial evidence, either intrinsic or extrinsic,—cannot be disregarded, but must control the decision of a court or jury. [Citation.] It is true that the rule admits of exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions or of his own conduct as to discredit his whole story. [Citations.] But neither court nor jury can willfully or through mere caprice disregard the testimony of an unimpeached witness. [Citation.]" (*People v. Davis* (1915), 269 Ill. 256, 270-71, 110 N.E. 9, 14-15 (the witness in question being the defendant in the case).)

(*People v. Jordan* (1954), 4 Ill. 2d 155, 163, 122 N.E.2d 209, 213.) The State never presented any contradictory or impeaching testimony (*e.g.*, rebuttal testimony by Hansen or Kitterman that defendant had not returned the key as he testified he had), and defendant's testimony about the return of the key does not fall into any of the exceptions to the general rule. Therefore, the jury was not free to disregard or disbelieve that testimony.

The evidence established that defendant had moved out of, and relinquished his key to, the house before November 15, 1985. Moreover, there was no evidence tending to show that he intended to, or could, maintain control and possession of the cannabis through Hansen or Kitterman's possession of it. In fact, there was evidence to the contrary, since the reason the three housemates were moving out of the house so soon after moving in was that they did not get along with each other. Accordingly, the evidence was insufficient to establish beyond a reasonable doubt that defendant had constructive possession, whether sole or joint, of the cannabis on November 15, 1985.

The evidence was sufficient to establish defendant's guilt of unlawful production of the *Cannabis sativa* plant (Ill. Rev. Stat. 1985,

ch. 56½, par. 708) and his guilt of the Class C misdemeanor of possession of a substance containing cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 704(a)), but was insufficient to establish his guilt of the Class 3 felony of possession of more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 704(e)). We therefore affirm that part of the judgment of the circuit court of Lake County finding defendant guilty of unlawful production of the *Cannabis sativa* plant (Ill. Rev. Stat. 1985, ch. 56½, par. 708); reverse that portion of the judgment finding defendant guilty of the Class 3 felony of possession of more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 704(e)); reduce the degree of that latter offense to the Class C misdemeanor of possession of a substance containing cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 704(a)); vacate the sentence imposed; and remand the cause for resentencing. 107 Ill. 2d R. 615(b).

Affirmed in part; reversed in part; sentence vacated; and remanded.

NASH and REINHARD, JJ., concur.